In the Matter of PERRY, ADAMS AND LEWIS SECURITIES, INC.; Pal Investments, Inc.; and Briarbrook Development Corp., Debtors.

George H. CLAY, trustee, Plaintiff,

v.

Jack L. PERRY, Defendant.

George H. CLAY, trustee, Plaintiff,

v.

K.R. ADAMS, Defendant.

George C. CLAY, trustee, Plaintiff,

v.

Norman E. LEWIS, Defendant.

Bankruptcy Nos. 80–01237–3, 80–00966–3 and 80–01699–3.
Adv. Nos. 81–1058–3, 81–1059–3 and 81–1537–3.

United States Bankruptcy Court, W.D. Missouri, W.D.

March 7, 1983.

As Amended May 17, and June 6, 1983.

Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for plaintiffs.

F. Russell Millin, Kansas City, Mo., for Jack L. Perry and K.R. Adams.

W. Stephen Nixon, Independence, Mo., for Norman E. Lewis.

AMENDED ORDER CONSOLIDATING ACTIONS FOR THE PURPOSE OF DETERMINATION AND JUDGMENT; FINDING GOOD CAUSE FOR RENDITION OF JUDGMENT ON FEWER THAN ALL CLAIMS AS REQUIRED BY RULE 54(b), F.R. CIV.P.; FINAL JUDGMENT FOR PLAINTIFF AND AGAINST DEFENDANTS ON CERTAIN COUNTS OF THE RESPECTIVE COMPLAINTS; FINAL JUDGMENT FOR DEFENDANTS AND AGAINST PLAINTIFF ON OTHER COUNTS OF THE RESPECTIVE COMPLAINTS: AND JUDGMENT ON THE ISSUE OF LIABILITY ONLY FOR PLAINTIFF AND AGAINST DEFENDANTS ON COUNTS OF PLAINTIFF'S COMPLAINTS PERTAINING TO LIABILITY FOR DEFICIENCY OF CORPORATE ASSETS TO SATISFY DEBTS

DENNIS J. STEWART, Bankruptcy Judge.

In these actions, the plaintiff trustee has sought, in complaints containing multiple counts and often raising difficult issues of fact and law, to recover certain amounts from defendants, who are former officers, directors, and shareholders of the debtor corporations. In all respects, the actions have been processed to trial and have been subjects of plenary evidentiary hearings.[1] Additionally, the parties have filed extensive posttrial briefs containing considerations which have required much review and reflection by the court.[2]

But now, because of the forthcoming end of jurisdiction of the bankruptcy court under the rule of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and because the court, after thorough review of the evidence and legal principles which are applicable as to this court, has determined that the trustee cannot recover. These judgments should now be entered.

1. The evidentiary hearing in the actions brought by the plaintiff trustee against the defendants Clay and Adams were conducted on December 30, 1981. That as to the defendant Lewis was held on the later date of June 29, 1982. In all three cases, as to the courts alleging that the defendants agreed to make up any deficit of assets to meet liabilities, the evidence was incomplete as to damages, only showing that the amount of any deficit could not be ascertained until the windup and closing of administration of these estates. Therefore, this court, under the impression (lately said to be erroneous) that the parties desired the court to await final distribution before determining these actions, stayed the rendition of judgment.

2. And the factual issues have seemed, for the reasons stated in note 1, *supra,* not to have been completed at the time of conclusions of the respective trials.

In order to deal with these matters intelligibly, the court will make its findings of fact and conclusions of law separately with respect to each count of the plaintiff's complaints.

I

## THE DEFENDANT K.R. ADAMS

(1) *Count I of Adversary Action No. 81–1048–3: Suit to Avoid Transfer of $32,-688.57 to the Defendant K.R. Adams.*

### (a) *Findings of Fact*

On January 1, 1976, PAL Investments, Inc., loaned the sum of $50,000.00 to the defendant K.R. Adams, who was then an officer, director, and major shareholder of that corporation. The consideration for the loan was a promissory note executed by the defendant K.R. Adams on January 1, 1976, in the principal sum of $50,000.00, payable in twenty years at a rate of interest of 6% per annum. It did not require any meantime payments of principal or interest. The proceeds of the loan were transferred by the defendant to another of the debtor corporations, Perry, Adams, and Lewis Securities, Inc. In return, the defendant K.R. Adams received one-third of the stock of Perry, Adams, and Lewis Securities, Inc., which, at the time, was at least of a value of $50,000.00.[3]

Although no payment of principal was due until 1996, the defendant made installment payments of principal and interest for more than four years at a rate which would have resulted in full payment of principal and interest in ten years. Payments ceased, however, after February 1980, at a time when the principal balance of $32,-688.57 was due.

### (b) *Conclusions of Law*

The transaction described above is avoidable on two separate and independent grounds: (1) as a fraudulent transfer under the laws of Missouri which is avoidable by a trustee in bankruptcy under § 544(b) of the Bankruptcy Code and (2) as a breach of fiduciary duty owed by a corporate officer to his corporation.

As to the first ground, the facts which are found above demonstrate that the transfer of $50,000.00 to the defendant on January 1, 1976, was for wholly inadequate consideration. A promise to pay, of course, can constitute adequate consideration. But a promise to pay only inadequate consideration must itself be regarded as inadequate consideration. The promise in this case to pay an extraordinarily low rate of interest[4] over an extraordinarily long term of repayment[5] must be regarded as grossly inadequate consideration.

Further, there are other badges of fraud in respect of the January 1, 1976, transfer

---

3. There is no contention by any of the defendants that they did not receive the face value of the stock which was issued to them in this transaction.

4. The rate of interest, furthermore, was established at this low point, at a time of steadily rising interest rates for a period of two decades. When the rising rates of interest are considered, the conclusion is irresistible that the consideration for the loan was not only inadequate, but grossly inadequate. If the prevailing interest rates were only as much as 3% higher than that of 6%, over a period of twenty years, even without compounding, some $30,-000 would be lost to the corporation and gained by the defendants. Thus, it can be concluded that the inadequacy of consideration itself raises an inference of fraud. "While inadequacy of consideration in the conveyance of property by a debtor is held to be a badge of fraud, yet it is not generally regarded as sufficient alone to

raise a legal inference of fraud *unless so gross as to create the assumption the conveyance could not have been made in good faith." Bolten v. Colburn,* 389 S.W.2d 384, 390 (Mo.App. 1965) (Emphasis added). The inadequacy is that gross in this case. But even if it were not, in conjunction with the other badges of fraud mentioned hereinafter, it is certainly sufficient to raise an inference of fraud.

5. Further, there was no security for the note and no payments of principal or interest due for the entire twenty years. According to the uncontradicted testimony of the accountant Howard D. Hall, Jr., the loan arrangement thus evidenced was wholly unusual and "unfair to the corporation." "Any unusual clause in an instrument, any unusual method of transacting the business . . . is of itself a badge of fraud." *Munford v. Sheldon,* 320 Mo. 1077, 9 S.W.2d 907, 910 (Mo.1928).

of $50,000.00: it was a transfer between a corporation and "insiders" in that corporation [6]; it was carried out in a sophisticated, indirect manner [7]; and the consideration for the transfer was not only inadequate, but grossly inadequate.[8] The confluence of such badges of fraud has been held to justify the setting aside of a transfer pursuant to the Missouri fraudulent conveyance statute.[9] Accordingly, a trustee in bankruptcy may set aside the transfer under the provisions of § 544(b) of the Bankruptcy Code. That section provides as follows:

> "The trustee may avoid a transfer of an interest in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title . . ."

Under the governing authorities, the section may properly be employed as a ground for the trustee's recovery of the balance of $32,688.57.[10] The action has been timely filed under the applicable statutes of limitation.[11]

■ Alternatively, a separate and independent ground of recovery is that of violation by the defendant of his fiduciary duty of loyalty to the corporation owed on account of his position as an officer and director of the debtor corporation from which he borrowed the money. "The relationship of officers and directors to a corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the benefit of the corporation and its stockholders." *Canion v. Texas Cycle Supply, Inc.,* 537 S.W.2d 510, 513 (Tex.Civ.App.1976). "Since a director occupies a fiduciary relation with a corporation . . ., he may not personally profit by virtue of the relationship at the expense of the corporation . . ." *Emergency Patient Services, Inc. v. Crisp,* 602 S.W.2d 26, 28 (Mo.App.1980). "(A) corporate director or officer cannot use the corporate assets to further his own individual interests or for personal benefit. If he does so, he can be held accountable to the corporation . . ." 18 Am.Jur.2d *Corporations* sec. 1281, p. 689 (2d ed. 1965). It is true that it is not always a violation of a corporate officer's or director's fiduciary duty for him to borrow money from his corporation. "In the absence of fraud, unfairness, concealment, or statutory prohibition, an officer or director of a solvent corporation may borrow money from it without being guilty of breach of trust. In doing so, however, he must act fairly, and the transaction must be free from fraud. Such transaction will be closely scrutinized." *Id.,* sec. 1295, pp. 701, 702. Similarly, "(i)n the absence of fraud, loans of the surplus funds of a corporation at less than the legal rate of interest, to directors who dominate it made without their participation in the authorization of the loan, have been held not to be illegal so as to render the borrower liable for interest at the legal rate." *Id.,* sec. 1295, p. 702. But, in this case, as found above, the low rate of interest, coupled with the unusually long term of the loan, had the effect of making the consideration so grossly inadequate as to render the transfer fraudulent.[12] It can be seen that, according to the

6. "Recognized indicia or badges of fraud include . . . transactions different from the usual method of doing business, . . . confidential relationship of the parties." *Conrad v. Diehl,* 129 S.W.2d 870, 877 (Mo.1939).

7. See note 5, *supra.*

8. See note 4, *supra.*

9. See § 428.020 RSMo; *Morris v. Holland,* 529 S.W.2d 948, 953 (Mo.App.1975). "Where there is a concurrence of so many badges [of fraud], a strong inference of fraud is raised, and a court of equity will be justified in finding its existence, in the absence of some explanation on the part of the defendant." *Toomay v. Graham,* 151 S.W.2d 119, 125 (Mo.App.1941).

10. The parties have stipulated to this balance, recoverable jointly and separately from the defendants.

11. The statute of limitations under the Missouri fraudulent conveyance statute had not run out at the time these title 11 proceedings were commenced. Under such circumstances, § 546(a) of the Bankruptcy Code grants two years after the appointment of a trustee to bring the suit.

12. See note 4, *supra.*

rates of interest in effect for the period of time which this loan has been in effect, the corporation's loss of interest would be at least equal to the sum of $32,688.57.[13] Therefore, for this separate and independent reason, the transfer of January 1, 1976, must be set aside and the balance due accordingly paid to the corporation's successor.

**(2) Count II of Adversary Action No. 81–1058–3: Suit to recover interest paid by corporation on behalf of defendant K.R. Adams**

*(a) Findings of Fact*

In count II, the plaintiff sues to recover principal and interest paid by the debtor corporation PAL Investments, Inc., to Boatmen's Bank and Trust Company and Traders Bank on loans made to the defendants K.R. Adams, Jack L. Perry, and Norman E. Lewis, the officers and directors of the debtor corporations, in the total sum of $225,000.00, the proceeds of which loans were deposited by defendants Adams, Perry and Lewis into the debtor PAL Investments, Inc. According to the written stipulation on which the parties have, in part, submitted this action for decision, "(t)here are no written documents supporting defendants' contention that the $225,000.00 deposited into the account of (PAL Investments, Inc.) was a loan, nothing in the minutes of (PAL Investments, Inc.) authorized the defendants to loan any money to Investments" and "(d)efendants did not receive any stock in exchange for the $225,-000.00 that they borrowed and deposited into the account of (PAL Investments, Inc.)."

*(b) Conclusions of Law*

On the basis of these material and operative facts, the plaintiff trustee contends that the transaction must be considered a contribution of capital, rather than a loan, by the defendant to the debtor corporation.

Consequently, it is argued, PAL Investments, Inc., in making payments of principal and interest on the loans to the respective banks, actually paid the defendant's individual indebtedness to the bank and, therefore, its trustee is entitled to reimbursement from the defendant of those payments of principal and interest.

■ In resolving this issue, the court of bankruptcy, as a court of equity, must discern the real substance and nature of the transaction, and its form is accordingly not controlling.[14] In this action, even though many of the indicia of a true loan were lacking, as is demonstrated by the above quoted excerpts from the parties' stipulations of fact, the benefits of the loaned monies were unquestionably conferred by the defendant upon the debtor corporation. It was therefore wholly commensurate with considerations of equity and fairness that PAL Investments, Inc., the debtor corporation, should have repaid the borrowed principal and interest to the banks. There is hardly any breach of corporate fiduciary duty under the facts of this case whereby the defendant can be said to have used "corporate assets to further his own individual interest or for personal benefit." 19 Am.Jur.2d *Corporations* § 1281, p. 689 (2d ed. 1965).

■ And further, if the issue at bottom depends, as the plaintiff trustee claims, upon whether the transaction between the defendant and PAL Investments, Inc., was a capital contribution or a loan, the greater weight of the probative evidence on this issue demonstrates that the transaction was intended to be a loan. This intent was most persuasively evidenced by the very fact of the debtor corporation's paying the principal and interest. This subsequent conduct under an agreement may be considered, under well-established principles, in determining the intent of the parties to a contract.[15]

**13.** See note 4, *supra*.

**14.** "[E]quity, which looks through form to substance, will treat the transaction according to its real nature." *Katz v. First National Bank of Glen Head,* 568 F.2d 964, 970 (2d Cir.1977).

**15.** "Unquestionably, the practical construction or uniform conduct or practice of the parties under a contract is a consideration of much importance in ascertaining its meaning and that consideration is entitled to great, if not

Therefore, for the foregoing reasons, the plaintiff's claim for relief in count II of his complaint against K.R. Adams must be denied.

### Count III of Adversary Action No. 81–1058–3 Suit to collect advances made to K.R. Adams

#### Findings of Fact

■ The defendant K.R. Adams, at his instance, received advances at various times from PAL Investments, Inc., in the sum total of $8,981.29, which he has not repaid to that corporation. According to the evidence which has been adduced in this action, these sums were carried on the books of the debtor corporations as "advances" and it was intended at the time the "advances" were made that they have the status of an account due from the defendant to the debtor corporation.[16] Nor can the unearned "advances" be set off by any indebtedness of the debtor corporation to the defendant K.R. Adams. In order for the right of setoff to obtain, there must be a *mutual* debt owed by the estate to the defendant. See § 553(a) of the Bankruptcy Code. Such mutuality cannot exist when the monies advanced are the property of the estate and accordingly subject to a turnover order under § 542(a) of the Bankruptcy Code.

#### Conclusions of Law

Judgment must be for the trustee for the recovery of these "advances." The right of the debtor corporation to recover these advances, made clear by the evidence, is now vested in its trustee. See § 541 of the Bankruptcy Code.

### Count IV of Adversary Action No. 81–1058–3 Claim for $3,000,000 to Make up Default in Corporate Assets

The defendant K.R. Adams signed a commitment which is contained in the minutes of a shareholders' meeting of March 7, 1980, which pertinently stated that he promised that he would, "either by assets or other held corporations and/or personal assets . . . make up the deficit of [Perry, Adams and Lewis Securities, Inc.] if any should exist." On the basis of this signed statement, the trustee "requests this court to enter judgment against defendant K.R. Adams in the amount of the total deficit sustained by the estate, plus interest thereon, plus costs and any other sum this court deems appropriate."

#### Conclusions of Law

■ By virtue of his claim for relief in this regard, the trustee contends that a contract was made with the corporate creditors, or corporation, whose rights he now seeks to enforce. It appears that this is so from the uncontradicted evidence. Although there is no clear evidence or stipulation of prebankruptcy acceptance of the defendant's offer in this regard, the trustee, as of the time of inception of the bankruptcy proceedings, can be regarded as accepting this offer which has been made without regard to any time limitation for its acceptance.

Therefore, a judgment on liability must be entered in favor of the plaintiff. With respect to the issue of damages, of course, judgment must be reserved until the wind-up and close of administration of these bankruptcy estates.

### Reason for early determination of less than all claims

■ The reservation of the issue of damages for later determination makes it necessary that the court find good reason for determining fewer than all the claims at this time. See Rule 54(b), F.R.Civ.P. to the following effect:

> "When more than one claim for relief is presented in an action, whether as a claim, a counterclaim, cross-claim, or third-party claim, or when multiple par-

---

controlling, influence in ascertaining the parties' understanding of the contract terms and language." 17 Am.Jur.2d *Contracts* § 274, pp. 683–684 (1964).

16. The stipulation of the parties and the evidence make clear that the advances were marked on the corporate books as such and intended as such.

ties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the claims or the rights and liabilities of claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

On due consideration and reflection, it appears to the court that, when the determination of the magnitude of any deficit of assets to meet liabilities at the windup and close of administration will largely be a ministerial task, the entry of judgment on the other claims now will not likely result in multiple appeals. For it is unlikely that, if the court's determination of liability on this last count is affirmed, there will be a separate appeal from the subsequent judgment on damages. And if, this judgment is in that respect reversed, then such a reversal would obviate the need for a subsequent finding as to the magnitude of damages.

### Magnitude of Liability of the Defendant K.R. Adams

■ According to the foregoing findings of fact and conclusions of law, the magnitude of the liability of the defendant K.R. Adams can be summarized as follows:

Liability on Count I—$32,688.57 plus interest at 9% from April 20, 1980.

Liability on Count II—None

Liability on Count III—$367.08

Liability on Count IV—None yet determinable

In determining the amount for which judgment is to be rendered in this action, the court must determine whether the $225,000 which, in the findings under count II, *supra,* were determined to constitute a loan by the defendants can be set off against the defendant's liability to the estate or whether, with respect to that amount, the defendant must be relegated to a general unsecured claim against the estate. In this regard, it must first be observed that one of the requirements for setoff under § 553(a) of the Bankruptcy Code is that there must be a mutual debt which is due and owing as of the date of inception of the title 11 proceedings. See *Matter of Isis Foods,* 24 B.R. 75, 77 (Bkrtcy. W.D.Mo.1982), to the effect that, in order for setoff to obtain, the debt must be absolutely owing as of the date of bankruptcy.[17] In this action, as in that one, there is insufficient evidence that any of the principal and interest was due and owing as of the date of bankruptcy. Evidence of the payment by the corporation of some of the interest, while sufficient to establish the character of the transaction as a loan, is not sufficient to establish any date certain on which payment was due in whole or in part. Further, it is always discretionary with the bankruptcy court as to whether a set-off is to be allowed. "... (a)ny and all setoffs are subject to the discretion of the bankruptcy court. 'Although the language of § 68 seems mandatory, the cases uniformly hold that the right to a set-off is discretionary.' *In re Diplomat Electric, Inc.,* 361 F.Supp. 1163, 1165 (S.D.Fla.1973), affirmed, 499 F.2d 342, 346 (5th Cir.1974) ('We review the lower court's exercise of discretion mindful that it should not be disturbed in the absence of clear abuse.')"; *Matter of Dahlberg,* 21 B.R. 730, 732 (Bkrtcy.W.D.Mo.

---

**17.** This court is aware that setoff is available under § 553 of the Bankruptcy Code when the indebtedness to the creditor of the title 11 debtor is absolutely owing, albeit not presently due as of the date of bankruptcy. But, as of the date of bankruptcy, the defendant had not yet made it altogether clear that he intended to treat the obligation as a loan rather than a capital contribution. This intent was only made clear with his demand for payment after the inception of the bankruptcy proceedings. (Further, even if the contribution must be deemed a capital contribution, it is in keeping with the principle of fairness that the debtor corporation which received the benefit of the contribution pay the interest thereon).

1982). Under the circumstances of this case, chiefly including the factors that the defendants are the controlling officers and directors of the corporations who should not be paid in advance of the other creditors, this court should exercise its discretion to deny the setoff even if it could be held (as it cannot be) that the evidence in this action had brought the defendants within the requirements of § 553(a), *supra*.[18] Accordingly, the defendant's claims of setoff should be denied. Judgment must be rendered for plaintiff and against the defendant K.R. Adams in the total above stated.

## Jurisdiction

■ Although the actions at bar are being decided after December 24, 1982, the date on which the bankruptcy court jurisdictional statute was stricken pursuant to the Supreme Court decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), they were filed and fully tried before that date. Therefore, the retention of bankruptcy court jurisdiction to render the judgments is made proper by the axiom that, once jurisdiction attaches, it is not ordinarily destroyed by later-occurring events.[19]

■ Further, with respect to the types of claims which are being adjudicated in these actions, under time honored principles, the bankruptcy court has jurisdiction even without the existence of a jurisdictional statute. As analyzed by this court, according to the above and foregoing findings, the recovery under count I is under the trustee's avoiding powers in §§ 548 and 550 of the Bankruptcy Code. In *Matter of Isis Foods, Inc.*, 26 B.R. 122, 9 B.C.D. 1291, 1292, 1293 (Bkrtcy.W.D.Mo.1983), this court has previously held such recoveries to be within the nonstatutory, inherent equity jurisdiction of the court of bankruptcy to administer and distribute the assets of an estate within its actual or constructive possession. The reasoning applied in that case, as follows, is equally applicable in this case:

"The motion (to dismiss) should be denied if an action to recover a preference can be considered as a matter integral to the administration and distribution of the bankruptcy estate. Of such matters, it has ordinarily been held that the bankruptcy court has inherent jurisdiction, not dependent on statute. 'Property in the custody of a court of equity for administration is always held by it in trust for those to whom it rightfully belongs. The jurisdiction to inquire and determine whom the lawful owners of it are and to that end to call before it all claimants by a reasonable notice or order to present their claims to the court within a reasonable time, or to be barred of any right or interest in the property in its custody, or in its proceeds, is a power *inherent* in

---

18. The same result may be reached by indulging the principle of subordination of claims under § 510 of the Bankruptcy Code, the provisions of which warrant the bankruptcy court, in its sound discretion, to prevent inequity between creditors and corporate officers and directors by subordinating the claims of the latter to those of the former.

19. Even the recent decision of the United States District Court for the Middle District of Tennessee divesting the bankruptcy court of jurisdiction in favor of district court jurisdiction under § 1334, Title 28, United States Code, did so only with respect to cases filed after December 24, 1982. Further, this court respectfully disagrees that § 1334, *supra*, can be regarded as granting the district court original jurisdiction which is exclusive of the inherent nonstatutory jurisdiction of the bankruptcy court. The statute does not so state and it has in the past been regarded, under the former Bankruptcy Act, as only supplementing the inherent summary jurisdiction of the bankruptcy court by permitting the district court, when necessary or desirable, to withdraw the reference of a case to a bankruptcy referee. Under the present Code, however, there is no provision for withdrawal of reference of a case to the bankruptcy judge, and it is the bankruptcy court which expressly has the statutory power under § 105 of the Bankruptcy Code, to issue all orders, process civil judgments in a bankruptcy case. Thus, while § 1334, *supra*, can be regarded as granting some concurrent jurisdiction to the bankruptcy court, that jurisdiction is ordinarily preempted by the bankruptcy court's exclusive custody of the property of the estate. The statute would have use when bankruptcy judgeships in a district are vacant or all the bankruptcy judges recuse themselves from a given case.

every court of equity, incidental and indispensable to the authority to administer the property in its possession and to distribute its proceeds.' *In re Rochford,* 124 F. 182, 187 (8th Cir.1903); 2 Collier on Bankruptcy, ¶ 23.03, p. 444, n. 6 (1976) (Emphasis added.) The court of bankruptcy, which is still explicitly confided all the power to issue all process, orders and judgment 'necessary or appropriate to carry out the provisions of this title,' § 105(a) of the Bankruptcy Code, has virtually from its inception been considered to be invested with this 'inherent' jurisdiction which is not dependent for its existence upon any statute.

"Accordingly, it was traditionally observed by the authorities on bankruptcy law that the summary jurisdiction of the court of bankruptcy to 'act summarily regarding controversies over property in its actual or constructive possession and proceedings arising in the course of administration' is not restricted by any statute. 2 Collier on Bankruptcy, ¶ 23.03, p. 443 (1976). 'Where a court of competent jurisdiction has taken property into its possession, through its officers, the property is thereby withdrawn from the jurisdiction of all other courts. The court, having possession of the property, has an ancillary jurisdiction to hear and determine all questions respecting the title, possession, or control of the property. In the courts of the United States *this ancillary jurisdiction may be exercised though it is not authorized by any statute.* The jurisdiction in such cases arises out of the possession of the property, and is exclusive of the jurisdiction of all other courts, although otherwise the controversy would be cognizable in them.' *Murphy v. John Hofman Co.* 211 U.S. 562, 570 [29 S.Ct. 154, 157, 53 L.Ed. 327] (1909) (Emphasis added.); *Wabash R. Co. v. Adelbert College,* 208 U.S. 38, 54 [28 S.Ct. 182, 187–188, 52 L.Ed. 379] (1980); 2 Collier on Bankruptcy, ¶ 23.03, pp. 443, 444, n. 3 (1976).

"The pivotal question now to be resolved is whether money or property sought to be recovered as a preference can be considered to be in the 'constructive possession' of the bankruptcy court. If money or property is held in the actual possession of a person other than the debtor or bankruptcy estate, 'the question becomes one of the substantiality of the claim under which possession is held, and that possession will be unavailing where the claim asserted is merely colorable.' 2 Collier on Bankruptcy, ¶ 23.05[1], p. 472 (1976). Under the former Bankruptcy Act, it was sufficient to establish a substantial adverse claim which placed the money or property out of the constructive possession of the bankruptcy court that the payment had been made on account of an antecedent debt. 2 Collier on Bankruptcy, Para. 23.06[9], pp. 515–518 (1976). But, under the substantive provisions of the new Bankruptcy Code, all sums recovered by the trustee under, *inter alia,* § 550 of the Bankruptcy Code, which includes preferential transfers, are expressly made part of the bankruptcy estate. And, further, while the former Bankruptcy Act expressly provided that, absent consent, plenary actions to recover preferences could not be brought in the bankruptcy court, see § 60b of the Bankruptcy Act, there is now no such statute in existence.

"It would appear that, in this action arising solely under the federal bankruptcy laws, it is those laws which now control the issue of what property is in the constructive possession of the bankruptcy court and whether, therefore, actions to require turnover of the property are within the inherent equity jurisdiction of the bankruptcy court. In expressly providing that moneys and property recoverable by the trustee exercising his avoiding powers are part of the estate, the new Code clearly and explicitly places those moneys and property in the constructive possession of the bankruptcy court. Therefore, this action is within the bankruptcy court's nonstatutory equity jurisdiction to administer and distribute the estate which is in its possession.

"And, it can be seen that, because an action to recover a preference arises and is governed exclusively by the federal bankruptcy law, it does not offend the rule of the *Marathon* case, *supra,* to hold that such an action is inherently within bankruptcy court jurisdiction. Accordingly, Congress can, as it has done, lawfully define the estate so as to include recoverable preferences."

It is therefore concluded that the claim to avoid the fraudulent conveyance is, even without a jurisdictional statute, within bankruptcy court jurisdiction.[20]

 As to the other causes of action contained in the plaintiff's complaints, they are also within the inherent jurisdiction of a court of bankruptcy. Section 542(b) of the Bankruptcy Code, by virtue of the following language, makes the matured rights of the estate to collect under a contract or an account a matter of summary turnover jurisdiction:

"Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under § 553 of this title against a claim against the debtor."

This, by necessary implication, means that the money or property which is the subject of the action to recover a matured right to payment under a contract is within the constructive possession of the bankruptcy court. For turnover jurisdiction has always been equated with the inherent summary jurisdiction to recover assets within actual

or constructive possession of a bankruptcy court.[21] And such turnover jurisdiction may be exercised by the bankruptcy court, without consent of the parties, to the extent that it does not abridge a constitutional right to a jury trial. As to "issues that may arise in bankruptcy proceedings and as a part thereof ... it was well settled ... that trials without a jury in bankruptcy proceedings were not a violation of constitutional rights because such proceedings were equitable in nature." 1 Collier on Bankruptcy ¶ 3.01, p. 3–84.3 (1982). In respect of the action at bar, there can be no denial of any right to a jury trial, when the right to recover is exercised against corporate officers as a matter of accounting to the corporation, now represented by its trustee in bankruptcy. "Courts of equity have original jurisdiction to state and settle accounts, or to compel an accounting, where a fiduciary relationship exists between the parties and a duty rests upon the defendant to render an account." 1 Am.Jur.2d *Accounts and Accounting* § 52, p. 424 (1962). Thus, the actions at bar are in the form of actions for accounting[22] by corporate officers, equitable actions brought in the bankruptcy court, which remains, even without a jurisdictional statute, a full fledged court of equity.[23]

Finally, it has always been held to be within the inherent summary jurisdiction of the bankruptcy court to determine whether a setoff should be allowed.[24] And, further, the consent or acquiescence of the parties to bankruptcy court jurisdiction affords subject matter jurisdiction where it does not otherwise exist. "It is true, of course, that generally federal courts will not obtain jurisdiction of the subject matter by consent or waiver ... such jurisdiction may be conferred by consent in actions relating to the

**20.** It is clear that there is no constitutional right to a jury trial in a fraudulent conveyance case.

**21.** See 2 Collier on Bankruptcy ¶ 23.05 (1976).

**22.** Accounting may ordinarily involve reference to a master, but not always.

**23.** This proposition holds true so long as its equitable powers are applied solely to the administration and distribution of property in its actual or constructive possession.

**24.** Those asserting a right of setoff against the bankruptcy estate are ordinarily considered to have consented to bankruptcy court jurisdiction.

bankruptcy proceedings." 2 Collier on Bankruptcy ¶ 23.08[1], p. 533, n. 7 (1976). In this case, the parties have acquiesced in bankruptcy court jurisdiction by going to trial on the merits and none of the parties has since withdrawn this consent to jurisdiction, although granted ample opportunity to do so.[25]

## THE DEFENDANT JACK L. PERRY

In respect to the defendant, the plaintiff seeks the same relief in all respects as are sought against the defendant K.R. Adams. The parties, furthermore, have entered into the same written stipulation of facts in respect of the defendant Jack L. Perry as they did with respect to the defendant K.R. Adams, and the same material evidence has been offered in a consolidated trial. The amount sought are the same, except for the amounts sought on account of "advances" and the amount of the setoff claimed by Jack L. Perry. The counts respecting advances are also multiple, but the amounts thereof are stipulated by the parties. Those amounts, respectively, are as follows:

Liability on Count I—$32,688.57 plus interest at 9% from April 20, 1980.

Liability on Count II—None

Liability on Count III—$8,981.29

Liability on Count IV—$360.00

Liability on Count V—$392.00

Liability on Count VI—$4,000.00

Liability on Count VII—None yet determinable

## THE DEFENDANT NORMAN E. LEWIS

■ Although the action involving the defendant Norman E. Lewis was fully tried rather than stipulated, the evidence demonstrated the facts material to a determination of liability in all respects to be the same as with the other defendants. The one exception is that the defendant Lewis has raised the additional defense that he was not, in reality, a managing officer or director; that his principal duties and responsibilities were in the area of sales; that

he was not consulted regularly by the other defendants on managerial decisions; that, therefore, while he does not deny the genuineness and authenticity of his signature on the several documents which form the basis of liability in these actions, he denies that he was cognizant of what he was signing; and that, accordingly, he would escape liability in this action. But there is absolutely no evidence of duress or coercion or of any pressure which resulted in Mr. Lewis' will being overborne; nor of any lack of opportunity to read what he was signing nor of any inability to comprehend it. Under such circumstances, the court cannot excuse the defendant Lewis from the liability which the evidence otherwise demonstrates to be his, as follows:

Liability on Count I—$32,688.57 plus interest at 9% from April 20, 1980

Liability on Count II—None

Liability on Count III—$1,767.08

Liability on Count IV—None yet determinable

## JUDGMENT

For the foregoing reasons, it is hereby

ORDERED that good cause be, and it is hereby, found to exist within the meaning of Rule 54(b), F.R.Civ.P., for rendition of judgment on fewer than all the claims. It is further

ORDERED that these actions be, and they are hereby, consolidated pursuant to Rule 42, F.R.Civ.P., for the purpose of determination and judgment. It is further

ADJUDGED that the plaintiff have and recover the sums stated above from the defendant K.R. Adams; the sums stated above from the defendant Jack L. Perry; and the sums stated above from the defendant Norman L. Lewis.
And it is further

ADJUDGED that on count IV of the complaints filed against defendants Adams and Lewis and on Count VII of the complaint filed against defendant Perry judg-

---

**25.** The court's orders since the date of trial have reiterated the questions regarding juris-diction.

ment be, and it is hereby, entered for the plaintiff and against all defendants on the issue of liability only.

And it is further

ADJUDGED that judgment be, and it is hereby, entered for the plaintiff on all counterclaims filed by the defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND DENYING DEFENDANTS' MOTIONS TO ALTER OR AMEND JUDGMENT

On March 7, 1983, this court rendered its judgment in favor of the plaintiff and against the defendants on several counts of the plaintiff's complaints against the defendants.

The plaintiff now timely moves, on the date of March 15, 1983, for alteration and amendment of the judgment in the following respects:

(1) Amendment of the judgment on count 1 in each of the three actions to include the amount of $5,674.37 as interest thereon at the rate of 9% per annum from April 2, 1980, to March 7, 1983;

(2) Amendment of the judgment in the action against Jack L. Perry, Adversary Action No. 81–1058–3, to change the references to count IV to count VII and to include judgment for plaintiff on counts IV–VI thereof as follows:

(a) count IV . . . . . . . . . . . . . . $ 360.00
(b) count V . . . . . . . . . . . . . . $ 392.00
(c) count VI . . . . . . . . . . . . . . $4000.00

(3) Amendment of the judgment in the action against K.R. Adams, Adversary Action No. 81–1059–3, to reduce the amount of the judgment awarded on

count III thereof from $8,981.29 to $367.08.

(4) Amendment of the judgment in each of the three actions to reflect judgment for plaintiff on each defendant's counterclaim.

Although the files and records and the stipulations on which the case was tried are productive of some confusion on each of these issues, the court has reexamined these records and has determined that these clerical amendments should be granted.[1] It is only consistent with the findings of fact and conclusions of law which have been made in the judgment of March 7, 1983, that interest at the legal rate should be awarded on count I, but the evidence and records heretofore have left some doubt as to whether the figure for which judgment has previously been rendered—the sum of $32,688.57—also included interest.[2] But now, the motion of the plaintiff to alter or amend the judgment in this regard has been on file longer than the time that the local rules of bankruptcy procedure grant for the filing of a brief in opposition and no such opposing brief has been filed.[3] Therefore, the court deems the defendants to have acquiesced in these requests for amendment—which otherwise appear justified by the files and records in the court.[4] Accordingly, the plaintiff's motion to alter or amend the judgment of March 7, 1983, will be granted.

## II

The defendants also move to alter or amend the judgment to nullify the judgment in plaintiff's favor on count IV of the respective complaints on the ground that

---

1. The errors of the court in this regard stemmed from its misreading of the several complaints and its failure to recognize that the governing figures had in fact been stipulated by the parties in the stipulations of fact filed on December 1, 1981.

2. The stipulation filed by the parties on December 1, 1981, referred to a balance due of $32,-688.57 as of April 2, 1980, including both principal and interest. There appeared from this and the other papers in the file to be no request for additional interest, except interest on the judgment itself which is awardable by opera-

tion of law. But, inasmuch as the defendants do not oppose this proposed amendment, it will be made.

3. See Rule 16(L) of the Local Rules of Bankruptcy Practice to the following effect: "Motions to which a response is filed shall be deemed submitted on the date the response is filed. When no response is filed, motions shall be deemed submitted 10 days after the filing thereof."

4. See notes 1 and 2, *supra*.

there was no consideration to the defendants for their commitments individually to make up any shortage of assets to cover the outstanding debts of the corporation. The evidence which was adduced in the trial and otherwise in these respective actions, however, shows to the contrary. As the plaintiff has observed in his suggestions in opposition to the motions for alteration or amendment:

"The trustee did present evidence which shows that there was consideration for the commitment. In March 1980, the shareholders wanted the debtor corporation to voluntarily withdraw from the broker/dealer business and from its affiliation as a member of the National Association of Securities Dealers ('NASD'), a quasi-government agency which has certain responsibilities for assuring compliance by its members with the laws and regulations governing broker/dealers. The NASD agreed to allow the debtor corporation to commence an 'orderly withdrawal' upon the condition that the shareholders provide a commitment to the corporation to be personally responsible for any corporate deficit which might exist upon termination of business.

"The defendants complied with this requirement and the NASD allowed the debtor to make a voluntary orderly withdrawal. The debtor ceased its operations pursuant to this procedure in mid-March 1980. On April 2, 1980 the debtor filed for voluntary relief under the Bankruptcy Code. Only then did SIPC come in and seek to have the debtor liquidated pursuant to the provisions of the Securities Investors Protection Act (SIPA).

"This evidence clearly shows that there was consideration for the shareholders' commitment: the NASD agreed to let the debtor voluntarily withdraw from the broker/dealer business. None of the defendants offered any evidence to contradict the evidence of consideration presented by the trustee and, therefore, the uncontradicted evidence supports the court's conclusion that a valid, enforceable contract was entered into between the shareholders and the corporation."

If it is rejoined that the consideration thus adverted to ran only to the debtor corporation which was permitted to withdraw, and not to the individuals, it must be noted that consideration which benefits the corporation may also be considered as consideration for the individuals behind the corporation. The withdrawal from NASD also unquestionably benefitted the defendants individually.[5]

Finally, the defendants contend that there is no evidence of acceptance by the trustee of the promises which comprised the commitment. The filing of the suits at bar, however, is itself a sufficient manifestation of acceptance. And otherwise, as the plaintiff now argues in his posttrial brief, when the commitment has the trappings of a contract made in favor of the creditors of the corporation, their manifestation of consent may not be necessary.[6]

## III

Therefore, accordingly, it is hereby

ORDERED that the plaintiff's motion for amendment of the judgment of March 7, 1983, be, and it is hereby, granted. Accordingly, it is further

ORDERED that the judgment of March 7, 1983, be, and it is hereby, amended by substitution of the attached amended pages thereof for the original pages. And it is further

ORDERED that the defendants' motions for reconsideration and alteration and amendment of the judgment of March 7, 1983, be, and they are hereby, denied.

5. The contract was, in substance, a third-party beneficiary contract between NASD and the debtor corporation for the benefit of the defendants and the shareholders. Under such circumstances, the beneficiaries need not manifest their consent to create a binding and enforceable contract.

6. See note 5, *supra*.