In re NIXON MACHINERY COMPANY, Debtor.

CREDIT ALLIANCE CORPORATION, Plaintiff,

v.

NIXON MACHINERY COMPANY, Defendant.

Bankruptcy No. 1–80–00779.
Adv. No. 1–80–0170.

United States Bankruptcy Court, E. D. Tennessee.

Feb. 25, 1981.

See also 6 B.R. 847.

Stephen P. Parish, Chattanooga, Tenn., for plaintiff.

Kyle R. Weems, Chattanooga, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

Credit Alliance, the plaintiff, commenced this proceeding to obtain relief from the automatic stays so that it could repossess five machines in possession of the debtor, Nixon Machinery. The court decided that Nixon Machinery should be allowed to retain the five machines for a limited period of time so that it might sell or lease them. In connection with that decision, Credit Alliance has made a request for adequate protection of its interests, which is the subject of this memorandum.

Nixon earlier contended that it had equity in four of the machines, that one of the four was leased and producing income for the estate, and that the others might be leased. Nixon contended that it needed the fifth machine for the prosecution of a lawsuit. Nixon added that the machines were necessary to its rehabilitation. The court concluded that Nixon should retain possession of four of the machines because it had equity in them which might be realized for the benefit of the estate and they were or might be leased for the benefit of the estate. As to the fifth machine, the court allowed Nixon to retain it not because of the prospective lawsuit but because it appeared that Nixon could sell it for a better price than Credit Alliance.

The proof as to equity in the four machines was not specific. The court's conclusion depended on Nixon's evidence that the market was improving and should continue to improve. Credit Alliance relied primarily on its argument that Nixon had no interest in the machines and did little to rebut Nixon's proof as to value. The court admitted that Nixon's equity was speculative. The court limited continuation of the automatic stay to 150 days.

At the hearing on this request there was proof that the leased machine, since retaken by Nixon, is worth less than is owed. In other words, there was proof that Nixon has no equity in it. Nixon received only two lease payments of $6,000 each.

At the hearing on this request, Mr. Kimery testified that the lease payments were set at twice the monthly depreciation and that other leases will be made on the same basis. He also testified that the market is still improving, and he expects higher prices in the spring. On behalf of Credit Alliance, Mr. Bagby testified in effect that the coal market is better but high interest rates have kept the equipment market depressed.

Mr. Kimery also testified that the four machines are in running condition.

It was represented that Nixon will return the loader which is the subject of a lawsuit. The court is therefore not concerned with adequate protection of Credit Alliance's interest in the loader.

Adequate protection generally is meant to preserve the secured creditor's position at the time of bankruptcy. If the automatic stays are meant to preserve the status quo of the debtor, adequate protection is meant to preserve the status quo for the secured creditor. 2 Collier on Bankruptcy ¶ 361.01 at 361–6 (15th ed. 1979).

What is required depends first on the value of the collateral. If it is less than the debt, then the creditor is secured up to the value of the collateral. Adequate protection is afforded if the creditor remains secured for that amount. That can usually

be accomplished by paying depreciation so that the declining value of the collateral plus the payments keep the creditor secured for the same amount. If the collateral is worth more than the debt, then the creditor is fully secured. It will be adequately protected if it remains fully secured. Accruing interest must be considered. 11 U.S.C. § 506(b). A sufficiently large equity may adequately protect the secured party, particularly if the collateral is increasing in value. Compare *In re Rogers Development Corp.*, 2 B.R. 679, 5 BCD 1392, 1 CBC 2d 499 (Bankr.Ct.E.D.Va.1980) (*Heritage Sav'g & Lo. Ass'n v. Rogers Development Corp.*) and *In re Castle Ranch of Ramona Inc.*, 3 B.R. 45, 5 BCD 1386, 1 CBC 2d 639 (Bankr.Ct.S.D.Calif.1980) (*Castle Ranch I Ltd. v. Castle Ranch of Ramona, Inc.*). See generally 9 Am.Jur.2d, Bankruptcy § 478 (1980).

There are basically four questions:

What should Credit Alliance receive from the lease payments as adequate protection of its interest while the machine was leased?

What is required to protect Credit Alliance's interest in the machines while they remain in Nixon's possession?

What will be required to protect Credit Alliance's interest in a machine that is subsequently leased?

What will be required to protect Credit Alliance's interest in a machine that is sold?

▋ Credit Alliance should receive payment of the depreciation caused by the use of the leased machine for two months. According to Nixon that would be $6,000, 50% of the payments. With other secured creditors Nixon has agreed to pay 80% of the lease payments as adequate protection of their interests. The court sees no reason why Credit Alliance should not also receive 80%. Nixon is not opposed to paying 80%. Moreover, the court next decides that Credit Alliance is not entitled to any payments as necessary to protect its interest while Nixon has possession. That conclusion is based on somewhat unspecific evidence. The additional 30% or $3,600, though small in comparison to the debts, may serve as a buffer.

Inherent in the court's decision to allow Nixon to continue in possession was the conclusion that the machines were not substantially depreciating. The court's conclusion as to value depended on an improving market as maintaining or increasing the market prices of the machines. Mr. Kimery's testimony this time was that he expects higher prices in the spring.

The court also concluded that the machines were worth more than the debts owed. The court did not determine exact amounts. At this hearing there was proof that the leased machine is worth less. Nixon also argued that for adequate protection purposes, value is liquidation value, which may be less than the value earlier assigned to the machines. The court cannot say that Credit Alliance is entitled to payments to cover accruing interest or depreciation of the machines while in Nixon's possession.

In the event a machine is leased, Credit Alliance is of course entitled to the depreciation caused by the lessee's use. Between a secured party and the debtor, adequate protection is still determined according to value rather than the income produced. According to Nixon's proof, the depreciation would be 50% of the lease payments. The court believes, however, that Credit Alliance should not be treated differently from those creditors who receive 80%. It was not shown whether they, like Credit Alliance, have other collateral in Nixon's possession that is not producing income, and if so, whether it is worth more or less than the debt it secures. The additional 30% also guards against damage or more than normal depreciation. Accordingly, in the event a machine is leased, Nixon will pay Credit Alliance 80% of the lease payments as received.

Of course, Credit Alliance may not be entitled to 80% of each payment for the full term of a lease. What is the total to which it is entitled? That is similar to the question of what Credit Alliance should receive in the event of a sale.

Nixon argued that in the event of a sale Credit Alliance should receive the liquidation value of the machine at the time of

filing, without regard to the amount of the debt at the time of filing and on the assumption that any excess should be attributed to Nixon.

On the proof as it presently is, the court is not prepared to decide the important question of the total to which Credit Alliance will be entitled if a machine is sold or leased. Furthermore, there may be little or no dispute. In the case of a sale that will depend on the price. The court therefore reserves decision until there is a sale or lease, at which time the question may be raised on motion of either party.

Finally, while the machines are in Nixon's possession it must maintain them so that they do not depreciate because of physical deterioration resulting from their idleness. Nixon must also insure the machines and guard them from theft or vandalism.

An order will be entered accordingly.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.