**In re Richard B. WHEELER, Jr., Debtor.**

**RIVA EQUIPMENT CORPORATION, Plaintiff,**

v.

**Richard B. WHEELER, Jr., Defendant.**

Bankruptcy No. 4–81–00072–G.

Adv. No. 4–81–0048–G.

United States Bankruptcy Court, D. Massachusetts.

July 29, 1981.

Jack E. Houghton, Jr., Pittsfield, Mass., for defendant.

**MEMORANDUM AND ORDER REGARDING COMPLAINT FOR RELIEF FROM STAY AND REQUEST FOR ADEQUATE PROTECTION**

PAUL W. GLENNON, Bankruptcy Judge.

The following memorandum represents findings of fact and law on a complaint by Riva Equipment Corporation for relief from stay pursuant to 11 U.S.C. § 362. A hear-

ing on all the issues between the plaintiff and defendant was held, and both parties submitted suggested findings of fact and law.

Richard B. Wheeler, Jr., (the "debtor") purchased a log skidder from the Riva Equipment Corporation ("Riva"), which involved a financing arrangement whereby Riva assigned its rights to the Canaan National Bank, and Riva agreed to guarantee payment of Wheeler's monthly loan obligations to the bank. When Wheeler defaulted on the loan, and subsequently filed a petition for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101, et seq.), Riva became liable for its payment to the bank. Riva seeks return of its collateral or adequate protection while the collateral is being used by the debtor.

The debtor, who is a logger of 22 years, presented evidence of current employment on an oral contract to harvest lumber. After a preliminary hearing, he was ordered to make monthly payments to Riva at the contract rate and to maintain full insurance on the collateral. The debtor uses the log skidder to haul out lumber from remote tracts of timber. The log skidder makes it possible for him to work as an independent logger and widens his opportunities in choices of jobs. Therefore the log skidder is clearly essential to an effective reorganization by the debtor.

The first issue to be decided in this action is to whether Riva is entitled to relief from stay. 11 U.S.C. § 362(d). Generally this decision involves a valuation of the collateral involved and a valuation of the debt, to see if the debtor has an equity cushion. See *In re Resnick*, 9 B.R. 891 (B.Ct.D.Mass. 1981). But, in this case the parties are in dispute over the price of the skidder, and as a result, valuation of the debt is difficult.[1] However, the parties have stipulated that the log skidder had a value of $49,000 on the date of the hearing. For the purpose of deciding the issues of relief from stay and later adequate protection, the court will rely on the figures Riva has presented. The plaintiff's most optimistic projection of the debt owed as of April 24, 1981 is $48,702. Since the parties have stipulated that the collateral is worth $49,000, it is easy to see that Riva was fully secured. Further, since the court has ordered and the debtor has been making monthly payments of approximately $1300, Riva's secured position seemingly has not been eroded. Therefore, so long as the debtor can provide adequate assurance that Riva's position will erode no further, and since Riva's position seems to have been maintained with the monthly payments, Riva is not now entitled to relief from stay under § 362(d). *In re Nixon Machinery Co.*, 9 B.R. 316 (B.Ct.E.D.Tenn. 1981).

The plaintiff-creditor, however, has reason to continue to fear because of the continuing diminution in value of its collateral and because of the questionable "equity cushion" of the debtor. A question remains as to how to continue to maintain Riva's secured position. Periodic payments have been suggested as a means to maintain the debtor's secured position. 11 U.S.C. § 361(1). After a preliminary hearing, the court ordered the debtor to make monthly payments, to the bank on the skidder at the contract rate of approximately $1300 and to insure the collateral against casualty loss. The real dispute is as to the proper amount to be paid as adequate protection.

Adequate protection represents the maintenance of the status quo of the creditor while the automatic stay maintains the status quo of the debtor. Adequate protection suggested in 11 U.S.C. § 361 means that the debtor has given proper assurance to the creditor that the latter's interest in the collateral is protected while the right of possession is denied to the creditor. *In re Born*, 10 B.R. 43 (B.Ct.S.D.Tex.1981). Yet at the same time, adequate protection does not necessarily mean that the secured creditor is put in the same position it was in when it initially negotiated the transaction.

---

1. The dispute as to the price has significance independent of the determination today, and therefore will be decided at a later date. Its only relevance today is as to the amount of the debtor's "equity cushion".

See *In re Hutton-Johnson Co., Inc.*, 6 B.R. 855 (B.Ct.S.D.N.Y.1980). The goal of the reorganization court is to balance the debtor's need for breathing room to form a plan, while at the same time making sure that the creditors are not placed in undue risk.

Periodic payments equal to the rate of depreciation in the value of the collateral have been used by some courts as a method of maintaining the creditor's fully secured position. See *In re Nixon Machinery Co.*, 9 B.R. 316 (B.Ct.E.D.Tenn.1981). The plaintiff did not present any evidence on the issue of depreciation, but by using the plaintiff's most optimistic price of the log skidder as delivered in December of 1979, $58,289, the straight-line depreciation from December of 1979 to February, 1981 would be a rate of $744 per month.

The plaintiff presented extensive testimony on the question of whether the defendant could afford to pay the contract price of either $1,262 or $1,362, whichever amount the court ultimately found to be applicable. The plaintiff also questioned the validity of the oral contracts of employment that the debtor is arranging. Most of this testimony is inapplicable to the issues of relief from stay or adequate protection but seems more appropriate for an inquiry as to the likelihood of reorganization under Chapter 11.

Wheeler has previously been successful as a logger. With this creditor, he has a history of meeting lease payments of $3500 a month for this very same log skidder. Until he was physically injured and unable to work for most of 1980, Wheeler was able to meet his financial responsibilities. He has testified that he is willing to work for 6 or 7 days a week, and to go to wherever he can find work in order to meet the payments required by his Chapter 11 plan.

The court in reorganization must not act hastily to sound the death knell of a business while a possibility of successful reorganization is possible. *In re Shockley Forest Industries, Inc.*, 5 B.R. 160 (B.Ct.N.D.Ga. 1980). The creditor in this case can have its position adequately protected by cash payments and insurance on the log skidder in question. Since, the debtor has offered to pay $1200 per month as adequate protection, and since this amount is nearly more than $400 more per month than Riva's loss due to depreciation, the court finds the debtor's offer to be sufficient.