In re SANTORO EXCAVATING, INC., Debtor.

In re Philip SANTORO, Ruth Santoro, Frank G. Santoro and Frank D. Santoro, Third Party Defendants.

Bankruptcy No. 82 B 20039.

Adv. Nos. 83 ADV. 6106, 83 ADV. 6127.

United States Bankruptcy Court, S.D. New York.

Sept. 16, 1983.

Teitelbaum & Gamberg, P.C., New York City, for trustee.

Spencer V. Hinckley, New Rochelle, N.Y., for Philip Santoro, et al. third party defendants.

McGovern, Connelly & Davidson, New Rochelle, N.Y., for Barclays Bank of New York and third party defendants.

## DECISION ON COMPLAINT BY TRUSTEE TO VOID ALLEGED PREFERENTIAL TRANSFER

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This preference suit by the trustee in bankruptcy is premised on a release of collateral worth $20,000 by the defendant bank to third party defendants, who had pledged $40,000 in collateral with the bank to secure the debtor's $35,000 obligation to the bank. Contemporaneously with the release of the collateral, the bank deducted $20,000 from the debtor's bank account, all of which occurred within 90 days before the bankruptcy petition was filed with this court.

The trustee in bankruptcy argues that the defendant bank did not occupy a secured status within the meaning of Code § 506(a) because the bank did not have a lien on property in which the estate had an interest in view of the fact that the collateral was owned by the third party defend-

ants. Therefore, the trustee reasons that the bank received more than it would receive in a Chapter 7 distribution. The bank denies that it received a preference and maintains that it received nothing more than it would have received in liquidation. Additionally, the bank contends that if a preferential transfer did occur, the third party defendants should be liable since they received the benefits of the transaction.

## FINDINGS OF FACT

1. On January 18, 1982 the above named debtor, Santoro Excavating, Inc., filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code. On May 19, 1982, the case was converted for liquidation under Chapter 7 of the Bankruptcy Code and the plaintiff was appointed as the trustee in bankruptcy.

2. The defendant, Barclays Bank of New York ("Barclays"), was a creditor of the debtor since September 30, 1981, when the debtor acknowledged a $35,000 loan obligation to Barclays and executed a secured demand note in favor of Barclays for $35,-000. The note was secured by four United States Treasury Bills, each in the amount of $10,000, for a total of $40,000. The Treasury Bills had been pledged as security by Philip Santoro, Ruth Santoro, Frank G. Santoro, and Frank D. Santoro, who were principals and relatives of principals of the debtor.

3. On January 7, 1982, eleven days before the debtor filed its Chapter 11 petition, Barclays was requested by the principals to release $20,000 from the security held by Barclays in connection with the loan to the debtor and to charge the amount released against the debtor's account with Barclays. Accordingly, Barclays sold $20,000 in pledged Treasury Bills and released this amount to the pledgors. Contemporaneously with this transaction, Barclays deducted $20,000 from the debtor's bank account on January 7, 1982.

## DISCUSSION

■ In order for a trustee in bankruptcy to avoid a preferential payment to a creditor on account of an antecedent debt owed by the debtor within 90 days before the date of the filing of the petition, the trustee must establish that the questioned repayment enabled the creditor to receive more than the creditor would have received upon liquidation under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 547(b)(5). The defendant, Barclays Bank of New York, argues that it is fully secured by United States Treasury Bills that were pledged by the principals and relatives of principals of the debtor. Thus, Barclays reasons that the release of $20,000 in security to the pledgors and the contemporaneous $20,000 charge against the debtor's bank account did not affect Barclay's position against the debtor's estate, because Barclays was fully secured and would be paid in full upon the liquidation of the debtor's assets under Chapter 7 of the Code. This court has stated in previous cases that a payment to a creditor with an allowed fully secured claim is not a preference. *See In re Castillo,* 7 B.R. 135, 137 (Bkrtcy.S.D.N.Y.1980); *In re Community Hospital of Rockland County,* 15 B.R. 785, 788 (Bkrtcy.S.D.N.Y.1981); *In re PDQ Copy Center, Inc.,* 26 B.R. 77, 79 (Bkrtcy.S.D.N.Y.1982).

■ However, Barclays did not have a lien on property of the debtor; the collateral was pledged by the third party defendants. A lien on property of another does not give rise to a secured claim against the debtor's estate. *Ivanhoe Building & Loan Association v. Orr,* 295 U.S. 243, 245–46, 55 S.Ct. 685, 686–87, 79 L.Ed. 1419 (1935); *In re United Cigar Stores Co. of America,* 73 F.2d 296, 297 (2d Cir.1934), *cert. denied sub nom. Irving Trust Co. v. Bankers Trust Co.,* 294 U.S. 708, 55 S.Ct. 405, 79 L.Ed. 1243 (1935); *Swarts v. Fourth National Bank,* 117 F. 1, 7 (8th Cir.1902); *In re Claxton,* 21 B.R. 905, 907 (Bkrtcy.E.D.Va.1982). Therefore, the fact that the bank held collateral which could satisfy its antecedent debt claim in full did not mean that it occupied a secured status vis-a-vis property of the estate and that it was invulnerable to the trustee's preference suit. This point was

clearly expressed in *Swarts v. Fourth National Bank* as follows:

> The test of a preference, as we have seen is whether or not a transfer or payment will have the effect to pay on one claim a larger dividend, out of the estate of the bankrupt than that estate will pay on other claims of the same class. *It is its effect upon the equal distribution of the estate of the bankrupt, not its effect upon the creditor, that determines the preference.* The same dominant thought controls and determines the classification of the creditors. Those creditors who are entitled to receive *out of the estate of the bankrupt* the same percentage of their claims are in the same class, however much their owners may have the right to collect from others than the bankrupt. Their relations to third parties, their right to collect of others, *the personal security they may have through indorsements or guaranties, receive no consideration, no thought.* It is the relation of their claims to the estate of the bankrupt, the percentages their claims are entitled to draw out of the estate of the bankrupt, and these alone, that dictate the relations of the creditors to the estate, and fix their classification and their preferences.

117 F. at 7 (emphasis added).

In the instant case, Barclays took $20,000 from the estate of the debtor when it deducted this amount from the debtor's account. However, the unsecured creditors could draw no comfort from Barclays' contemporaneous release of $20,000 in collateral because the collateral was not property of the estate and was not released to the debtor. The $20,000 from the sale of the Treasury Bills was returned to the third party defendants who had originally pledged the Treasury Bills with Barclays. Thus, the third party defendants who requested Barclays to release the $20,000 to them in exchange for Barclays' charging a like amount against the debtor's bank account, were, in fact, the actual beneficiaries of the transaction. Barclays' position remained constant; it could look to the remaining Treasury Bills that were pledged by the third party defendants for full satisfaction of its outstanding claim.

A somewhat similar transaction developed in *In re Church Buildings and Interiors, Inc.,* 14 B.R. 128 (Bkrtcy.W.D.Okl.1981), where the debtor owed $40,000 to a bank. As security for the loan the bank held the personal guarantees of two of the debtor's officers who had sufficient net worth to satisfy the debt. Within the 90-day period before the bankruptcy petition was filed the bank released the two guarantors in exchange for a security agreement from the debtor which granted the bank a security interest in all of the debtor's tangible and intangible property. The court concluded that it might be found that a voidable preferential transfer did in fact occur when the debtor gave the bank a secured interest in the debtor's property in exchange for the bank's release of the guarantors. However, the court noted that the guarantors were the real beneficiaries of the transfer and they had not been named as party defendants in the trustee's preference action. Therefore, the court concluded that no recovery could be had against the bank and that the guarantors, for whose benefit the transfer was made, might be liable under 11 U.S.C. § 550(a)(2), which permits recovery from "any immediate or mediate transferee of such initial transferee."

The instant case differs from *In re Church Buildings and Interiors, Inc.* in that here the debtor did not give Barclays any property that the bank did not already have. Barclays did not need a security agreement because it already held more than $20,000 of the debtor's money in the debtor's bank account. Barclays' release of $20,000 in Treasury Bills to the third party defendants resulted in converting part of its secured claim to a $20,000 prepetition unsecured claim against the debtor. As part of the same transaction, Barclays then offset $20,000 in the debtor's account against the bank's outstanding claim under the debtor's $35,000 note to the extent of $20,000.

Under 11 U.S.C. § 553(a) a creditor has the right "to offset a mutual debt ow-

ing by such creditor to the debtor that arose before the commencement of the case under [the Bankruptcy Code] against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." A creditor's right to offset mutual prepetition debts is allowed to the extent that such offset does not result in an improvement in the creditor's position during the 90-day prebankruptcy period, as proscribed under 11 U.S.C. § 553(b)(1). In the instant case, Barclays' release of the Treasury Bills in the amount of $20,000 and its contemporaneous $20,000 deduction from the debtor's bank account did not cause any improvement in Barclays' position; the bank continued to be fully secured to the extent of the remaining Treasury Bills in its possession.

Hence, although Barclays was not secured by a lien on property in which the estate had an interest, the bank did hold a claim against the debtor that was subject to setoff under 11 U.S.C. § 553. Therefore, Barclays must be regarded as secured to the extent of the permitted setoff. This conclusion is compelled by the alternative language in Code § 506(a) that reads in relevant part as follows:

§ 506. Determination of secured status. (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, *or that is subject to setoff under section 553* of this title, *is a secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, or *to the extent of the amount subject to setoff,* as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a) (1982) (emphasis added). By equating setoff with secured claims, the Code recognizes that a permitted setoff is, in effect, an allowed preference. This point was observed in 2 Norton Bankruptcy Law and Practice as follows:

While the Code does not expressly so state, the intent appears to be that issues concerning the substantive scope of setoff

rights are not to be considered under preference law, but are controlled under Code § 553. In an earlier draft of the Code, "setoff" was included within the definition of a transfer and special provision was made for setoffs in Code § 547. In the enacted version of the Code, however, both of these provisions were deleted and Code § 553 was adopted. As to the deletion of the specific reference to "setoff" in the definition of "transfer," the express intention was to leave standing the rule of prior case law to the effect that a setoff is not a transfer for purposes of preference law.

2 W. Norton, Norton Bankr.L. & Prac. § 33.01, at Part 33–Page 3 (1981) (footnote omitted).

The position of the third party defendants who originally pledged the Treasury Bills with Barclays, and who directed Barclays to deduct $20,000 from the debtor's account after Barclays returned $20,000 worth of collateral to them, is not as secure as Barclays. They do not have the benefit of the setoff exception. Their status is akin to the bankrupt's wife in *Smith v. Tostevin,* 247 F. 102 (2d Cir.1917), who had pledged as security for a bank loan to her husband certain shares of corporate stock which she owned. The bankrupt became aware of his insolvency and paid the bank its loan within one week of his bankruptcy petition and received back his wife's stock, which he then delivered to her. Judge Learned Hand's opinion reversed the district court's dismissal of the trustee's suit against the bankrupt's wife and held that the bankrupt's payment to the bank was in fact a voidable preference to the wife, who had a contingent claim against the estate to the extent that her property might be used to satisfy the bankrupt's obligation to the bank. Judge Hand expressed this point as follows:

Before insolvency the surety, by payment of the debt, gets through subrogation the status of a transferee, and that status protects him from loss. After insolvency, while he is, of course, still subrogated, his subrogation will not protect him. He

must pay without recourse, and he loses to the extent of the insolvency. A payment to the creditor discharges him, therefore, precisely as though made directly to him. Hence it was inevitable that such a payment should be held a preference, whether made to the innocent creditor or to the surety; the effect was identical, whichever course was chosen.

247 F. at 103.

Similarly, in *In re Herman Cantor Corp.*, 15 B.R. 747 (Bkrtcy.E.D.Va.1981), a debtor's payment to a bank in exchange for the bank's release of collateral to the debtor's wife resulted in a voidable preference because the debtor's payment was not accompanied by the release of an equivalent value to the estate. Rather, the property was released to the pledgor-wife. The court ruled that the debtor's payment to the bank was subject to avoidance because the transfer benefitted the pledgor-wife, whose contingent claim was discharged.

In light of the foregoing, the trustee's complaint against Barclays to recover for a voidable preference must be dismissed because Barclays had the right to exercise a setoff against the debtor's account. Consequently, Barclays' third party complaint against Philip Santoro, Ruth Santoro, Frank G. Santoro and Frank D. Santoro should also be dismissed as academic, without prejudice to any complaint that the trustee might file against them to the extent that their contingent claims were satisfied when Barclays released $20,000 worth of Treasury Bills to them in exchange for setting off an equivalent amount against the debtor's bank account.

SUBMIT ORDER on notice.