In re The MASON AND DIXON LINES, INCORPORATED, a Tennessee Corporation, Debtor.

The MASON AND DIXON LINES, INCORPORATED, a Tennessee Corporation and George E. Gilbertson, Trustee, Plaintiffs,

v.

ST. JOHNSBURY TRUCKING CO., Defendant.

The MASON AND DIXON LINES, INCORPORATED, a Tennessee Corporation and George E. Gilbertson, Trustee, Plaintiffs,

v.

HOLMES TRANSPORTATION, Defendant.

The MASON AND DIXON LINES, INCORPORATED, a Tennessee Corporation and George E. Gilbertson, Trustee, Plaintiffs,

v.

KERR MOTOR LINES, Defendant.

Bankruptcy No. B–84–00377 C–11.

Adv. Nos. A–86–0108, A–86–0071 and A–86–0077.

United States Bankruptcy Court, M.D. North Carolina.

Oct. 17, 1986.

Clyde H. Jarrett, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, N.C., for debtor.

Jordan J. Frassineti, Frassineti & Glover, Greensboro, N.C., for St. Johnsbury Trucking Co. and Holmes Transp.

Richard A. Leippe, Smith, Helms, Mulliss & Moore, Greensboro, N.C., for Kerr Motor Lines.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Bankruptcy Judge.

Mason and Dixon Lines, Incorporated [hereinafter Mason and Dixon] filed for Chapter 11 reorganization March 29, 1984. The reorganized debtor, Mason and Dixon, and the trustee, George E. Gilbertson, filed an adversary complaint for the recovery of certain preferential transfers from defendant St. Johnsbury Trucking Co. [hereinafter St. Johnsbury] on March 31, 1986. Mason and Dixon also filed two other adversary complaints against the defendants Holmes Transportation and Kerr Motor Lines.

On August 29, 1986, a hearing was held on cross motions of plaintiff Mason and Dixon and defendant St. Johnsbury for summary judgment. Also, on August 29, 1986, the Court heard the motion of defendant Holmes Transportation for summary judgment and conducted a pretrial hearing in all three named cases. At that hearing, it appeared to the Court that the same

issue was paramount in each case and the Court requested briefs from the parties.

## FACTS

Mason and Dixon and the defendants are all common carriers. Mason and Dixon and the defendants participated in an "interline" arrangement for freight carriage. In this arrangement, carriers cooperate in the transportation of freight so that each hauls freight for the other and the carriers become indebted to one another for these services. The rules and regulations for conducting business between the carriers are governed by the Motor Carrier Freight Claim Rule Book for Common Carriers published by the American Trucking Association. Rule 132 provides that the carrier has a right of setoff when an account is 30 days delinquent.

Mason and Dixon and St. Johnsbury participated in the interline arrangement prior to Mason and Dixon filing for Chapter 11 reorganization. During the 90–day preference period, Mason and Dixon paid St. Johnsbury $4,373.51 in 7 checks as payment of St. Johnsbury invoices. Of this total amount, Mason and Dixon asserted that $3,657.10 in payments were made more than 45 days after the debt was incurred and the reorganized debtor claimed $3,657.10 as a preferential payment. During the same 90–day period, St. Johnsbury made payments of $58,740.98 to Mason and Dixon and postpetition defendant paid $15,-522.56 to plaintiff.

The factual situation was similar for the other two adversary proceedings. During the preference period, the plaintiff and defendants had an ongoing business relationship in which each party provided services to the other, billed the other, and paid each other for services. Payments flowed from Mason and Dixon to defendants and from defendants to Mason and Dixon.

Mason and Dixon contends that the payments it made to the creditor carrier within 90 days prepetition can be recovered as preferential payments. Defendants contend that the payments were not preferential to the extent that they had a right of setoff against Mason and Dixon at the time of payment. Defendants did not contend that they had a claim at petition filing which could be setoff pursuant to Code section 553. Rather, defendants argued that the payments made by Mason and Dixon during the 90–day preference period were not preferences either because (1) the payments did not meet the section 547(b)(5) requirement that the payment improve the creditor's position over that in a Chapter 7 liquidation and thus there was no preferential effect or (2) the payments came within the exception to preferences of section 547(c)(1) as contemporaneous exchanges for new value.

In addition, defendants claim that the ordinary course of business exception applied to certain payments. Plaintiffs attempted to exclude this as a defense by asserting preferences only for payments beyond the 45–day time limit of section 547(c)(2) effective at the time this case was filed. The Court requested briefs from the parties on the issues of setoff and the relinquishment of the right to setoff by acceptance of payments. The briefs did not discuss the ordinary course of business exception. Mason and Dixon only sought recovery of payments beyond the 45–day rule.

## ISSUE

Whether payments made by Mason and Dixon to defendant carrier within 90 days prepetition were preferential payments when defendant carrier held a mutual debt against Mason and Dixon at the time of payment and trucking association regulations provided for a setoff after a 30–day delinquency?

## DISCUSSION

■ This Court holds that payments which Mason and Dixon made to defendant carrier during the 90–day period preceding the filing of the bankruptcy petition were not preferences to the extent the defendant carrier had a valid right of setoff at the time of payment. It appears to the Court

that an essential requirement for a preference has not been met, i.e., the requirement of section 547(b)(5) that the creditor will receive more due to this payment than the creditor would receive in a Chapter 7 liquidation case. In addition, the Court feels that the payments qualify as a contemporaneous exchange for new value pursuant to section 547(c)(1) to the extent the right to setoff was relinquished.

First, this Court finds that all requirements for a preferential payment have not been met. Section 547(b) of the Bankruptcy Code provides that five factors must be present for a preference. Section 547(b) provides:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under Chapter 7 of this title [11 USCS §§ 701 et seq.];
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 1 et seq.].

Defendants contend that the payments in question do not enable the creditor to be paid more than he would have received in a Chapter 7 and thus do not meet the section 547(b)(5) standard.

To compare what the creditor would have received in a Chapter 7 with what he received prepetition, one has to consider how the debt would have been treated in a Chapter 7 liquidation. In the case at bar, had the debtor not made the payment to the creditor carrier, the creditor could have offset the debt prepetition pursuant to section 553 or if the 30 days elapsed postpetition had the offset amount allowed as a secured claim under section 506(a). In any event, the creditor would have received 100% credit for the debt of Mason and Dixon. Thus, the creditor received no more prepetition than he would have received in a Chapter 7.

St. Johnsbury was in the position of a creditor with a continuing right to setoff if the debtor Mason and Dixon failed to pay St. Johnsbury. Motor Carrier Freight Claim Rule 132 controls interline payments between carriers. Rule 132 provides for interline settlements as follows:

> INTERLINE SETTLEMENTS: Interline settlement will be made on a weekly basis. Contra- or off-set settlements will not be made. Balance due bills and/or resettlements will not be included in current interline settlements.
>
> *Exception:* 1. In the event either party becomes delinquent, in accordance with the provisions of this part, the other party may require cash settlement until such time as delinquent items are paid, and acceptable proof furnished that future settlements will be maintained on a current basis.
>
> *Exception:* 2. Contra- or off-set settlements may be made after account becomes thirty days delinquent.

Code section 553 provides, with exceptions not relevant here, that the creditor's right to an offset is not affected by the Bankruptcy Code. Section 553 provides that the Code

> ... does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case ... against a claim of such creditor

against the debtor that arose before the commencement of the case....

Thus, the Code provides that the creditor retained its right of offset and could have offset debts of Mason and Dixon to the creditor carrier against amounts owed by the creditor carrier had Mason and Dixon failed to pay its account and been delinquent at petition. If the creditor owed Mason and Dixon sufficient funds to offset its debt to Mason and Dixon in full, the creditor could have offset 100% of its debt.

Thus, pursuant to Rule 132 and section 553(a), if a carrier were delinquent 30 days in payment of its bill to another carrier, the creditor carrier could offset the debt against payments due to debtor carrier. In the case at bar, Mason and Dixon made the payments timely and the creditor did not need to offset any amount at the date of filing. Prepetition, Mason and Dixon could not have avoided payment in full to the creditor carrier because of St. Johnsbury's continuing right to offset the debt against the payments of St. Johnsbury owed the debtor. Mason and Dixon is trying to pull back payments from a creditor with a right of setoff which it could not avoid prepetition as long as the creditor carrier also owed Mason and Dixon an equal amount for interline services.

█ Mason and Dixon argues that the payments meet the section 547(b)(5) standard and thus were preferential because the most an unsecured creditor could have gotten in a Chapter 7 was a 10% dividend (suggested by the dividend to unsecured creditors provided in the Chapter 11 reorganization plan). Mason and Dixon's argument ignores the fact that this creditor with a mutual prepetition debt subject to offset could have gotten a 100% payment anytime the account became 30 days delinquent. Mason and Dixon inappropriately classifies the trucking company with an interline debt as a general unsecured credi-

tor when the trucking company had additional rights to setoff not available to a general unsecured creditor. Thus, this creditor stood in a preferential position to other unsecured creditors prepetition due to nonbankruptcy law and received no greater payment prepetition than it would have received in a Chapter 7.

█ Furthermore, it appears to this Court that the carrier creditor in this case was in a similar position as a creditor with a secured claim. Section 506(a) provides that an allowed claim subject to setoff under section 553 is secured to the extent of the amount subject to setoff.[1] Payments to a fully secured creditor are not preferential because the creditor does not receive more than he would in a Chapter 7 liquidation. *See, e.g., In re Flaten,* 50 B.R. 186, 195 (Bankr. D.N.D. 1985); *In re Santoro Excavating, Inc.,* 32 B.R. 947, 948 (Bankr. S.D.N.Y.1983); *In re Ken Gardner Ford Sales, Inc.,* 10 B.R. 632, 645 (Bankr.E.D. Tenn.1981), *aff'd,* 23 B.R. 743 (E.D.Tenn. 1982).

If Mason and Dixon had not made these payments to defendants, defendants would have a claim in bankruptcy recognized as secured pursuant to section 506(a) to the extent of defendants' right to setoff. Thus, to the extent payments were accepted by defendants when defendants had corresponding amounts available for offset, as established by Rule 132 and common trade practices, the defendants did not receive preferential payments.

Mason and Dixon argues that there clearly was no right of setoff at the time of filing for St. Johnsbury. Mason and Dixon paid St. Johnsbury's invoices. Thus, St. Johnsbury never exercised any right of setoff and St. Johnsbury "voluntarily" paid Mason and Dixon its bills.

█ It appears Mason and Dixon believes that it could cut off defendant's right of setoff prepetition by payment and then

---

**1.** Section 506(a) provides in pertinent part as follows:

an allowed claim of a creditor ... that is subject to setoff under section 553 of this article, is a secured claim ... to the extent of

the amount subject to setoff ... and is an unsecured claim to the extent that ... the amount so subject to setoff is less than the amount of such allowed claim.

recover that payment as preferential and extinguish the creditor's right to setoff which would have arisen absent payment. This appears to be convoluted reasoning. If followed, this tactic would deny a creditor a right to offset which section 553 of the Code says the bankruptcy law does not affect. This Court finds it hard to believe that defendants would have "voluntarily" paid Mason and Dixon if Mason and Dixon had not paid defendants' bills. No factors were presented to the Court to suggest why St. Johnsbury would have relinquished a right to offset had Mason and Dixon not paid St. Johnsbury. The regulations, common trade practice, and logic suggest that the payments were reciprocal in nature and that absent payments from Mason and Dixon the creditor would have taken an offset and not "voluntarily" relinquished this right.

■ In the second place, the Court concludes that the payments made to defendants would not be preferential payments to the extent that the payments were a contemporaneous exchange for new value. To the extent that the creditor carrier had a corresponding mutual debt to Mason and Dixon which would have been available for offset upon 30 days delinquency, the creditor did not receive a preference when he accepted payment. Upon receipt of payment, the creditor relinquished its right to setoff the Mason and Dixon debt and thus gave present consideration or new value for the payment.

Section 547(c)(1) provides an exception to the preference rule for a contemporaneous exchange for new value.[2] "New value" is defined at section 547(a)(2) as follows:

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee

under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

Under the Bankruptcy Act, a number of cases recognized that a creditor provided present consideration for a payment if a creditor relinquished his right to perfect a mechanic's or materialman's lien by acceptance of the payment. In *Greenblatt v. Utley*, 240 F.2d 243 (9th Cir.1956), appellant purchased property from the debtor prior to bankruptcy and paid the debtor a sum of cash and a note secured by two deeds of trust. The purchaser agreed to make certain improvements upon adjoining land of the debtor and the debtor agreed to credit the cost of the improvements against the note. After completion of the improvements and within the preference period, the debtor credited the cost of the improvements against the debtor's equity in the note. After the debtor filed bankruptcy, the trustee sought to avoid the credit as a preferential payment. The 9th Circuit noted that under California law the creditor had an inchoate mechanic's lien against the debtor's property at the time the credit was given. The time for perfection by filing had not expired and the Court concluded that the credit was given in satisfaction of the inchoate mechanic's lien. Thus, the Court found that the credit was not a voidable preference. The Court concluded that the credit discharged the mechanic's lien and that "[t]he discharge, to the extent of the lien, was a present consideration for the credit. The credit did not deplete the bankrupt's estate and consequently did not diminish the assets available to meet the claims of other creditors." *Id.* at 247. *See also, Ricotta v. Burns Coal & Building Supply Co.*, 264 F.2d 749 (2d Cir.1959); *Keenan Pipe & Supply Company v.*

---

2. Section 547(c)(1) provides:
   (c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was—
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was

made to be a contemporaneous exchange for new value given to the debtor; and
   (B) in fact a substantially contemporaneous exchange;

*Shields,* 241 F.2d 486, 489–490 (9th Cir. 1956).

■ The theory that relinquishment of an inchoate lien right constitutes new value continues to be viable under the Bankruptcy Code. In *In re Advanced Contractors,* 44 B.R. 239 (Bankr.M.D.Fla.1984), the Court considered the situation of a subcontractor who preserved its mechanic's lien rights initially, then accepted payment from the debtor during the preference period, and subsequently abandoned its lien rights. General Elevator Corporation subcontracted with the debtor contractor for installation of elevators. Debtor defaulted under the subcontract and the creditor subcontractor filed a notice as required by statute to preserve its lien rights. During the time that General could perfect its lien rights, the debtor paid General and General released the security. The Bankruptcy Court concluded "The payment of the debt and the simultaneous release of the security by General which occurred within the 90–day preference period represents a contemporaneous exchange for new value." *Id.* at 241.

In *In re Dick Henley, Inc.,* 38 B.R. 210, 213 (Bankr.M.D.La.1984), the Court recognized that the creditor's release of lien rights by acceptance of payment during the preference period came within the definition of "new value" in section 547(a)(2). The Court concluded that Congress had not intended section 547(a)(2) to define "new value" exclusively and the release of lien rights could be considered as within "release by transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law." 11 U.S.C. section 547(a)(2).

This Court views the facts in the case at bar as analogous to the materialman with an inchoate lien. The materialman with an inchoate lien has a right to perfect within a certain statutory time frame. If the debtor pays the debt during the time that the materialman could perfect and as a consequence the materialman does not proceed with the perfection of the lien, the courts have recognized that the materialman relinquished a right that constitutes "new value" within the meaning of section 547(a)(2).

With interline payments between carriers, the creditor carrier has a right of setoff if the debt is 30 days delinquent. If the debtor pays the debt, the creditor relinquishes the right of setoff. This Court feels that the creditor carrier's relinquishment of the right of setoff by accepting the debtor's payments should constitute new value as does the relinquishment of an inchoate lien right. As long as the creditor carrier has a debt at least equal to the debtor's payment, the creditor instantaneously relinquishes its right to offset upon acceptance of payment. The right to offset is a right protected by section 553 and the relinquishment of that right should constitute "new value" within the meaning of section 547(c)(1).

### CONCLUSION

This Court holds that the payments Mason and Dixon made to St. Johnsbury and the other defendants during the 90–day preference period were not preferential to the extent that the creditor carrier had a right to setoff a mutual debt at the time payment was made. The Court concludes that the payments subject to valid setoff were not preferential because they did not meet the criteria of section 547(b)(5) that the creditor receive more through the payment than the creditor would within a Chapter 7 liquidation. Furthermore, certain payments could come within the section 547(c)(1) exception as a contemporaneous exchange for new value to the extent that the creditor relinquished his right to setoff at the time of acceptance of payment from Mason and Dixon.

Let an order be entered agreeable with this Memorandum Opinion.

### ORDER

Pursuant to the Memorandum Opinion filed contemporaneously herewith, IT IS ORDERED that summary judgment be granted defendant in each adversary proceeding

and that plaintiff Mason and Dixon be denied recovery of the sums requested as such payments are not preferential transfers subject to avoidance pursuant to Bankruptcy Code § 547(b).