ROBERT MADDEN HILL, Circuit Judge:
In this bankruptcy appeal, Exxon Company, U.S.A., argues that the district court erred in concluding that Exxon could not setoff pre-petition claims owed to it by debtor Braniff Airways, Inc., against prepetition debts that it owed to Braniff. We find that Exxon does have a right of setoff pursuant to 11 U.S.C. § 553(a), but that any setoff is potentially subject to being recovered by Braniff pursuant to 11 U.S.C. § 553(b). Since the record is not sufficient to allow us to decide whether a section 553(b) recovery by Braniff is appropriate, we reverse and remand this case for further proceedings as outlined herein.
I.
The facts in this case are undisputed and have been stipulated to by both parties. Prior to Braniff’s filing its petition on May 13, 1983, for relief under Chapter 11 of the Brankruptcy Code, Exxon and Braniff were parties to a contract for the sale of jet turbo fuel. Pursuant to the contract, Braniff made a prepayment by wire transfer each week based on its estimated fuel needs for the following week. On May 11 Braniff made one of these weekly prepayments in the amount of $530,000 for estimated fuel purchases for the week beginning May 12. By May 13 when Braniff filed its bankruptcy petition, it had used $96,252.11 in fuel. The unused prepayment of $434,972.20 was owed to Braniff.
As of the date of the bankruptcy petition, Exxon also had pre-petition claims against Braniff in the amount of $1,824.21. An agreed turnover order pursuant to 11 U.S.C. § 542(b) was subsequently entered in the bankruptcy court authorizing Exxon to setoff mutual pre-petition claims and debts in the amount of $1,824.31 under 11 U.S.C. § 553. The remaining $433,147.89 of the prepayment was ordered remitted to Braniff.
Prior to the filing of Braniff’s bankruptcy petition, Braniff and Exxon also had a contract for the sale of turbo oil, lubricating oil, gasoline, and other miscellaneous products that were sold on open account. *1033 During the ninety-day period prior to bankruptcy, Braniff had made payments total-ling $145,745.30 to cover purchases it made pursuant to this account.[1]
Braniff commenced this action by filing suit in the district court seeking to recover as voidable preferences the payments it made to Exxon on the open account during the ninety days prior to its filing for bankruptcy protection. Braniff stipulated that $80,752.80 of the $145,745.30 in open account payments fall within the exception in 11 U.S.C. § 547(c)(2)[2] and are not recoverable as voidable preferences. The dispute regarding these payments revolves around the remaining $64,992.50.
As a result of a stipulation by the parties as to the facts, the only issue to be decided by the district court was whether Braniff s open account payments to Exxon allowed Exxon to receive more than it would have if the payments had not been made and Braniff were liquidated under Chapter 7 of the Bankruptcy Code. The resolution of that question depended on whether Exxon was secured by a right of setoff of its claim against Braniff in the amount of $64,992.50 against the debt that it owed to Braniff in the amount of $433,147.89.
The district court ruled in Braniff's favor. The court found that Exxon did not have a right of setoff under 11 U.S.C. § 553 because the debt owed by Exxon to Braniff was created by a judgment of the bankruptcy court, which occurred after the bankruptcy petition was filed. Thus, because the debt arose post-petition, the court held that the debts were not mutual, prepetition debts, and the requirements of section 553 prior to a setoff being allowed were not met.
Exxon now appeals, contending that the debts were mutual and pre-petition and therefore it was entitled to setoff the amount owed by Braniff against the amount owed to Braniff. This right of setoff, Exxon claims, has the status of a secured claim and thus the payments made by Braniff to it on the open account were not preferential because, being secured, it did not receive more than it would have in a Chapter 7 liquidation.
II.
Section 547(b) of the bankruptcy code allows a trustee to recover as a preferential payment certain transfers made by a debt- or to a creditor within the ninety-day period prior to bankruptcy. This section provides the elements of a preference:
Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
(A) the case were a case under Chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
*1034 11 U.S.C. § 547(b). The first four elements are not in dispute; Exxon has stipulated to the applicability of each one. The controversy revolves around the fifth element. This is the requirement that before a trustee in bankruptcy can avoid a preferential payment, the trustee must establish[3] that the payment enabled the creditor to receive more than the creditor would have received upon liquidation under Chapter 7 of the bankruptcy code. It must be determined, then, whether Exxon, in receiving the prepetition open account payments from Braniff, received more than it would have if the payments had not been made and Braniff were liquidated.
To compare what the creditor would have received in a Chapter 7 liquidation with what it received pre-petition, it is necessary to consider how the debt would have been treated in a Chapter 7 liquidation. In re Mason and Dixon Lines, Inc., 65 B.R. 973, 976 (Bankr.M.D.N.C.1986). That is, if the debtor had not made the payment to the creditor, and the debtor were liquidated, it must be determined what amount the creditor would receive.
Exxon argues that it was secured by a right of setoff, so that if there were a Chapter 7 liquidation it would have been able to setoff its claim to the open account payments made by Braniff against its debt to Braniff growing out of Braniff s jet fuel prepayments. Exxon contends that this amount that it would be entitled to in a liquidation would be the same amount that it received as pre-petition payments from Braniff because of this setoff right, and therefore the payments did not enable it to receive more than it would have in a liquidation.
The issue therefore becomes whether Exxon had a right of setoff, because if such a right exists Exxon would be secured and would therefore have a permissible preference to the degree of the allowable setoff. See In re Brooks Farms, 70 B.R. 368 (Bankr.E.D.Wis.1987); In re Santoro Excavating, Inc., 32 B.R. 947, 950 (Bankr.S.D.N.Y.1983). This conclusion is based on section 506(a), which provides that a claim subject to setoff under section 553 is secured to the extent of the amount subject to setoff.[4] See Mason and Dixon Lines, 65 B.R. at 977; Santoro, 32 B.R. at 950. Any “[p]ayments to a fully secured creditor are not preferential because the creditor does not receive more than he would in a Chapter 7 liquidation.” Mason and Dixon Lines, 65 B.R. at 977 (citing cases). Thus, since section 553 bestows secured status upon a creditor for the amount of the set-off, and payments to a secured creditor are not preferential, section 547 cannot be used to avoid the amount of the setoff. See Brooks, 70 B.R. at 372-73 (“When § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect. The enactment of § 553 was an expression of the Congressional intent sanctioning the exercise of setoff as a permissible preference under certain circumstances.”) (citing In re Fox, 62 B.R. 432 (Bankr.D.R.I.1986)); In re Nepsco, 55 B.R. 574, 578 (Bankr.D.Me.1985) (when a creditor has an offsetting pre-petition debt that exceeds the amount of the payments it has received from the debtor, the creditor has not been preferred); In re Balducci Oil Co., 33 B.R. 847, 852 (Bankr.D.Colo.1983) (“Section 553(b) ... is, in essence, a miniature preference provision____”).
Exxon argues that it is entitled to setoff because it had a pre-petition debt to Braniff in the amount of $434,972.20 and a pre-petition claim of $1,824.21, which were setoff, and that if Braniff had not paid the $64,-992.50, Exxon would merely have had a *1035 larger claim to setoff. Thus, if the open account payments had not been made, Exxon asserts that it would have merely remitted a lesser amount back to the bankrupt estate. For the reasons set forth below, we agree with Exxon that it had a right of setoff.
Setoffs in bankruptcy are governed by section 553, which provides in pertinent part:
(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case____
11 U.S.C. § 553(a). Thus, under this section
[t]o maintain a right of setoff, the creditor must prove the following:
1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.
2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
3. The debt and the claim are mutual obligations.
In re Nickerson & Nickerson, Inc., 62 B.R. 83, 85 (Bankr.D.Neb.1986). The debts and claims do not have to be of the same character before setoff may be applied. In re Braniff Airways, Inc., 42 B.R. 443, 447 (Bankr.N.D.Tex.1984). The only requirements are that the debts and claims be mutual and pre-petition.
A.
The first question is whether Exxon’s debt to Braniff is pre-petition.[5] Braniff argues that Exxon’s debt was post-petition because it was a debt created by the judgment of the bankruptcy cojurt. Exxon responds that the debt was created at the time of the pre-payment from Braniff to it for the purchase of jet fuel, which occurred prior to bankruptcy. Thus, it must be determined when the debt arose.
A “debt” is defined as “a liability on a claim.” 11 U.S.C. § 101(11). A “claim” is defined as a “right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, natural, unnatural, disputed, undisputed, legal, equitable, secured, or unsecured____” 11 U.S.C. § 101(4). Exxon asserts that its debt fits within these definitions because when the prepayment was made Braniff became entitled to either jet fuel or to a refund, and Exxon thus incurred the liability when it received the money. While the actual amount was not fixed, it argues the debt was absolutely owed.
Braniff relies on In re V.N. DePrizio Construction Co., 52 B.R. 283 (Bankr.N.D.Ill.1985), to support its position that the debt was post-petition. Braniff argues that the debt did not arise until the amount of the unused prepayment could be calculated, which occurred post-petition. In De-Prizio the court held that because the amount of a refund due to the debtor insured from the insurance company was not computed and the funds were not yet delivered to the creditor insurance agency, the creditor’s attempt to use the funds owed to the debtor to offset a debt owed by the debtor to the creditor failed. Id. at 287. The court so held because the adjustment to the insurance policy had not been made, so the funds did not yet exist as an amount due and had not yet been received by the agency. The court stated: “In order for set-off to have occurred, the adjustment would have to have been computed and the funds delivered to [the creditor insurance agency] prior to the filing of the bankruptcy by [the debtor insured].” Id.
Braniff asks that we follow DePrizio and hold that since the actual amount due from Exxon to Braniff was not calculated prior to the filing of the petition, there were not mutual, pre-petition debts. We *1036 decline to adopt this position. First, DePrizio is not completely on point. In DePrizio the creditor had not received the funds that were owed to the debtor, see id. (“[The creditor] did not have any funds due [the debtor] which it could use to set-off the amounts due from [the debtor].”), while in the present case Exxon was in receipt of Braniffs funds. Moreover, to. the extent that DePrizio is on point, we decline to follow it. We find no language in the definition of a “debt” or “claim,” or in the elements of section 553, giving rise to a requirement that an amount due must be computed prior to the filing of bankruptcy. Supporting this view are numerous decisions that reach a contrary result to that in DePrizio.
For example, in Nickerson & Nickerson, on facts similar to DePrizio, the court allowed the creditor insurance agency to use the as yet uncalculated and not yet received funds owed to the debtor-insured to offset a claim of the agency against the insured. See id. 62 B.R. at 86-87. The court stated: “the right to setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed.” Id. at 85. In In re Morristown Lincoln-Mercury, Inc., 42 B.R. 413 (Bankr. E.D.Tenn.1984), the court noted that “Code § 553 does not prohibit setoff of a creditor’s claim arising pre-petition, unliquidated or unmatured as of the petition date, against a debtor’s pre-petition claim. Furthermore, a contingent claim which arises prior to the commencement of a bankruptcy case may be setoff against a pre-petition claim of the debtor’s estate.” Id. at 417-18 (citations omitted). The court concluded: “The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor’s petition is filed.” Id. at 418. See also In re Elsinore Shore Associates, 67 B.R. 926, 946 (Bankr.D.N.J.1986) (“It is not necessary that the debt sought to be setoff be due when the bankruptcy case is commenced.”); In re Delta Energy Resources, Inc., 67 B.R. 8, 12 (Bankr.W.D.La.1986) (In concluding that it was a pre-petition debt, the court noted “that all the transactions which gave rise to this debt occurred prior to the petition date. The genesis of the debt is clearly pre-petition and although the refund order was entered later, LGS [the creditor] was overcharged before the petition was filed.”).
We agree with the holdings in cases such as Nickerson & Nickerson. The debt owed the debtor does not have to be calculated prior to the filing of the bankruptcy petition in order for setoff to be available to a creditor. In this case, pre-petition, Exxon clearly owed Braniff either fuel or a refund of the fuel prepayments. The debt was absolutely owed; it just was not due until a calculation of the amount of fuel that was used was made. To say that Exxon did not have a pre-petition debt to Braniff would be to say that Exxon could have retained the fuel prepayment funds and not have delivered any fuel to Braniff. Braniff could have certainly brought an action against Exxon in such a case, alleging that Exxon owed it either money or fuel. Thus, as in Delta Energy, “all the transactions which gave rise to this debt occurred prior to the petition date. The genesis of the debt is clearly pre-petition and although the refund order was entered later,” Exxon owed Braniff before the petition was filed. We hold, therefore, that Exxon’s debt to Braniff was pre-petition.
B.
Braniff also argues that the mutuality requirement is not present and thus setoff should not be permitted. We disagree. “[I]t is essential to the establishment of a setoff that the claims or debts be mutual____” Braniff, 42 B.R. at 449. For mutuality to exist, “each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.” DePrizio, 52 B.R. at 287 (quoting 4 Collier on Bankruptcy ¶ 553.04, at 553.30 (15th ed. 1985). The mutuality element is lacking if a party attempts to setoff a pre-petition debt against a post-petition claim. See Braniff, 42 B.R. at 449 (“As a general rule, neither a creditor nor a debtor may offset *1037 pre-petition debts and claims against post-petition debts and claims because of the absence of mutuality of the parties.”); In re Virginia Block Co., 16 B.R. 771, 775 (Bankr.W.D.Va.1982) (“A post-petition debt cannot be set off against a pre-petition claim.”).
Based upon our conclusion that Exxon’s debt owed to Braniff was pre-petition, and the uncontested fact that Braniff’s debt to Exxon was also pre-petition, this mutuality requirement has been met. Braniff, however, does not attack this aspect of mutuality. Rather, Braniff argues that since the fuel prepayments were advances and the advances were subject to a turnover order, the monies advanced were in reality the property of the bankrupt estate and therefore mutuality did not exist. Braniff cites In re Perry, Adams and Lewis Securities, Inc., 30 B.R. 845 (Bankr.W.D.Mo.1983), and In re Brendem Enterprises, Inc., 12 B.R. 458 (Bankr.E.D.Penn. 1981), as support for this theory.
In Perry, the defendant, Adams, argued that advances he received from the debtor corporation, PAL Investments, Inc., should be offset by an indebtedness of the corporation to him. It was not clear what the advances were given for, but the parties stipulated that the advances had the status of an account due from Adams to the corporation. Because of this status, the court held that mutuality did not exist because the advanced funds were the property of the estate and were accordingly subject to a turnover order under section 542(a)[6] of the bankruptcy code. 11 U.S.C. § 542(a). Perry, 30 B.R. at 851. The court did not discuss the basis for holding that section 542(a) was applicable.
We do not consider this case to be controlling. In Perry the court found that the advanced funds were the property of the estate. The court did not indicate why or how it came to this conclusion, or even why that fact should matter (beyond the applicability of section 542(a), which we discuss below). It may be that the court was concerned with the relationship between Adams and PAL, which made the advances at Adams’ insistence. Id. Adams was an officer, director, and major shareholder of PAL. Id. at 848. It seems the court may have felt that because of the insider relationship the “advances” were not an arm’s length business transaction, and therefore the funds were still the property of the corporation. The situation in the present case is different. The creditor and the debtor are completely unrelated. The money transferred was given as payment for a product — clearly an arms-length business transaction. We see no reason to hold that mutuality does not exist based on Perry.
Moreover, even if the Perry court were not concerned with the relationship between the parties, we still decline to follow the rule it seems to establish. The court indicates that when property of a debtor held by a creditor is subject to a turnover order under section 542(a) mutuality cannot exist. We fail to see the rationale for this rule, but even if that is the case, the present situation is distinguishable. In Perry the court cited section 542(a) explicitly as the basis of its turnover order. This section makes no provision for a setoff pursuant to section 553.[7] In the present case, the agreed turnover order was entered by the bankruptcy court pursuant to section 542(b), which expressly excepts funds that can be setoff pursuant to section 553.[8] Section 542(a) has been inter *1038 preted as encompassing funds that are the property of the estate, see Perry, 30 B.R. at 851 (“mutuality cannot exist when the monies advanced are the property of the estate and accordingly subject to a turnover order under § 542(a)”), while section 542(b) clearly speaks in terms of a debt. See 11 U.S.C. § 542(b) (“an entity that owes a debt”). Thus, under the Perry rationale if section 542(a) were applicable there would be no mutuality because the funds would be the property of Braniff and Exxon would not be indebted to Braniff. Also, under section 542(a), setoff is not expressly allowed. However, the bankruptcy court in the agreed turnover order relied on section 542(b), which expressly recognizes the existence of a debt, and the availability of setoff of a claim against that debt. Therefore, we believe that Braniff’s reliance on Perry is misplaced.
Braniff also argues that mutuality is lacking because Exxon held the money as either a trustee or bailee for the benefit of Braniff. Because of this status of Exxon, Braniff asserts that it and Exxon are not standing in the same capacity, and there is no mutuality. Braniff relies on Brendem to support this argument. In Brendem the court held that property in the possession of a creditor as bailee or trustee without color of lien would not be available for setoff. Brendem, 12 B.R. at 460. In such a case, the title of property would be in the bankrupt estate, not the creditor. Id.
In Brendem, the debtor was in the business of selling audio equipment. The creditor manufactured audio equipment, selling its products to the debtor. When the debt- or accumulated a significant amount of defective equipment, it was returned to the creditor for repairs, replacement, or as credit on future purchases. The court, stating that the returned property was held by the creditor in the capacity of a bailee, ruled that since the creditor never treated the goods as its own, the debtor owned the goods and mutuality did not exist. Id.
Braniff asserts that Exxon occupies a similar position to that of the creditor in Brendem. Braniff, however, never states how a bailment arose; instead Braniff merely states that Exxon never treated the funds as its own, and that Braniff owned them. There is no contention that an express bailment agreement existed. Nor do we believe that there exists a bailment relationship by implication. The elements of a bailment are delivery of personal property by one person to another in trust for a specific purpose and acceptance of such delivery, and an express or implied contract that the trust will be carried out and the property returned to the bailor or dealt with as he directs. Yoakum Grain, Inc. v. Energy Industries, Inc., 511 S.W.2d 95, 98 (Tex.Civ.App.— Corpus Christi 1974, no writ). These elements are not met in this case. First, assuming the funds qualify as property that can be subject to a bailment, the money in this case was not given in trust. It was given as payment for fuel. Moreover, once the “specific purpose” was carried out, the funds became Exxon’s property. The property was not returned to Braniff nor did Braniff have any right to direct how Exxon should deal with the money. There is no bailment relationship.
For the foregoing reasons we hold that the debt owed by Exxon to Braniff and the claim possessed by Exxon against Braniff are mutual obligations.
C.
Braniff next attempts to add an additional requirement to the elements of section 553. Braniff's argument in support of the district court’s decision denying Exxon the right to setoff is that “Exxon received more money than it would have had the preferential payments not been made because Exxon did not possess ‘secured status’ by virtue of the right of a setoff at the time the preferential transfers were made.” Thus, Braniff is arguing that to determine whether a creditor has the right to setoff claims, the court must examine the status of the parties at the time the preferential payment was made. And, since at the time the open account pay *1039 ments were made Braniff had not yet transferred the payment for fuel, Exxon did not owe Braniff anything and did not have a right to offset.[9] Since that right did not exist, argues Braniff, Exxon was not secured by section 553 and the preferential payment can be avoided under section 547(b).
We disagree with this analysis. No where in section 553 do we find such a requirement. Rather, section 553 requires only that the debts arise “before the commencement of the case.” Braniff does cite two cases as authority for its theory, however. In In re Prescott, 51 B.R. 751 (Bankr.W.D.Wis.1985), aff'd in part, rev’d in part, 805 F.2d 719 (Bankr. 7th Cir.1986) the court stated: “To determine whether a creditor is fully secured the court looks at the creditor’s status immediately before the contested transfers occurred.” Id. at 755. In In re Nepsco, 55 B.R. 574 (Bankr.D.Me.1985), there is also found the following language: “At the time the payments were made, CGI [the creditor] would have had a secured claim____” Id. at 576. We recognize that these two cases do appear to set forth a requirement that the time a preferential payment is made is the time to determine whether setoff is available. However, it is not clear where these courts have found such a requirement. Neither opinion cites any statutory or case authority for its holding.[10] Moreover, there are numerous decisions discussing the requirements of section 553 and none articulate such an element. See, e.g., Brooks, 70 B.R. 368; Elsinore, 67 B.R. 926; Delta Energy, 67 B.R. 8; Mason and Dixon, 65 B.R. 973; DePrizio, 52 B.R. 283; Braniff, 42 B.R. 443; In re Hecht, 41 B.R. 701 (Bankr.S.D. N.Y.1984); Santoro, 32 B.R. 947; In re Energy Co-op. Inc., 32 B.R. 680 (Bankr.N.D.Ill.1983). See also 4 Collier on Bankruptcy n 553.01 to 553.17 (15th ed. 1986).
Further, there is at least one case that reaches results contrary to Braniff’s theory. In Energy Co-op., the debtor ECI was indebted to the creditor Murphy for delivery of petroleum products made to ECI by Murphy prior to the filing of the bankruptcy petition on May 15. On May 15, subsequent to the earlier delivery but also prior to the filing of the petition, Murphy received a delivery of gasoline from ECI, thus becoming indebted to ECI subsequent to the time its claim against ECI arose. Although the exact date when Murphy’s claim arose is not given, it is clear that it was prior to May 15 when Murphy’s debt arose. The court held: “The uncontested facts indicate that the ECI deliveries made to Murphy on May 15th were made prior to 12:01 [the time of filing the petition]. Consequently, the deliveries represented prepetition obligations which Murphy can set-off against the pre-petition claim it has filed against ECI.” Energy Co-op., 32 B.R. at 683.
The present case is similar to that in Energy Co-op. Exxon had a pre-petition claim existing against Braniff prior to its debt owed to Braniff. Subsequent to that date, Exxon incurred a pre-petition obligation owed to Braniff. Following Energy Co-op., the order that the debts arose is not relevant, provided that they are both prepetition. We therefore decline to adopt Braniff’s view that the order the debts arise does matter, and following the plain language of section 553, and the numerous cases applying it, hold that the only timing *1040 requirement relevant to deciding if setoff is allowed is that the debts arise pre-petition.
In conclusion, we find that the debts were mutual pre-petition debts and Exxon was secured by this right to setoff.
III.
Braniff argues, however, that if Exxon is allowed to setoff its claim against its debt, Exxon will have improved its position in violation of section 553(b)(1) and thus the setoff should not be allowed. Based on the record before us, there is some indication that this argument may have merit, but because there is an insufficient factual development, we must remand the case for further fact finding.
Section 553(b)(1) provides in pertinent part:
[I]f a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
(A) 90 days before the date of the filing of the petition; and
(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
11 U.S.C. § 553(b)(1). If section 553(b) is applicable, pre-petition setoffs within the 90 day period before filing that improve the creditor’s position can be recovered by the trustee. In re Fox, 62 B.R. 432, 433 (Bankr.D.R.1.1986). In Fox the court set forth the analysis to be used to determine what amount, if any, the trustee can recover:
The application of this statute is strictly mathematical, and the test is whether the insufficiency on the date of the setoff is less than the insufficiency 90 days before the date of the filing of the petition. See Assiante v. Davisville Credit Union (In re Assiante), 28 B.R. 903 (Bankr.D.R.1.1983). If it is, the difference in the insufficiency, which is recoverable by the trustee (or the debtor), is calculated as follows:
(1) Ascertain any amount by which the claim of the creditor exceeded the debt owing to the debtor on the date of setoff.
(2) Ascertain the same figure for the date 90 days prior to the filing of the petition or for the first date during the 90-day period when the amount of the claim of the creditor exceeded the debt owing to the debtor.
(3) The trustee is entitled to recover any amount by which the figure in (2) exceeds that in (1).
Id. at 434 (footnote omitted) (quoting 4 Collier on Bankruptcy 11533.01[4], at 533-8 (15th ed. 1986)).
The key factor, then, is the term “insufficiency.” This term is defined as the “amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such a claim.” 11 U.S.C. § 553(b)(2). Thus, we must determine (a) the amount of any insufficiency on the date of the setoff and (b) the insufficiency 90 days prior to the date of the filing of the petition, or the first date during the 90 days when an insufficiency existed.
At the time the setoff would have occurred,[11] Exxon’s claim against Braniff was $64,992.50, and the debt owing to Braniff was $433,147.89. Exxon’s claim against Braniff did not exceed the debt Exxon owed to Braniff. Thus, the insufficiency at the time of setoff was zero.[12]
*1041 The second inquiry involved in determining the extent of the recovery permitted by the trustee under section 553(b) cannot be made based on the factual development in the record before us. At the time of Braniff’s payment to Exxon, it is not clear whether Exxon was indebted to Braniff. Other than the stipulated facts, there has been no development of the financial relationship existing between the parties. Therefore, we cannot resolve this issue, and must remand the case to the district court for such proceedings.[13] Upon doing so, the court can then rule on whether Exxon has improved its position in violation of section 553(b) in light of its right to setoff the pre-petition claim in the amount of $64,992.50 owed to it by Braniff against pre-petition debt in the amount of $434,-972.20 it owed to Braniff.
IV.
For the foregoing reasons, we REVERSE the district court’s decision that Exxon was not entitled to a setoff, and REMAND for further proceedings consistent with this opinion.

. The last payment appears to have been made on May 7.

. Section 547(c)(2) provides:
(c) The trustee may not avoid under this section a transfer—
(2) to the extent that such transfer was—
(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(C) made according to ordinary business terms; ...

. The burden of proof to establish this element is on the trustee. See In re Nepsco, Inc., 55 B.R. 574, 576 (Bankr.D.Me.1985); 4 Collier on Bankruptcy K 547.35, at 547-119 (15th ed. 1986).

. Section 506(a) provides:
(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor’s interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor’s interest or the amount so subject to setoff is less than the amount of such allowed claim.
11 U.S.C. § 506(a) (emphasis added).

. There is no question concerning the fact that Braniffs debt to Exxon arose pre-petition.

. Section 542(a) provides:
(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
11 U.S.C. § 542(a).

. See supra note 6.

. Section 542(b) provides:
(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.
11 U.S.C. § 542(b).

. It is not clear whether Exxon was indebted to Braniff at this time because of any other fuel prepayment transfers or for any other debt. The evidence only indicates that Exxon was not indebted to Braniff with respect to the last Braniff fuel prepayment.

. In Prescott the court cited D. Epstein, Trustee's Avoiding Powers, 2 Bankruptcy Practice and Procedure 28 (PLI 1984) for its proposition that the court looks at the creditor’s status immediately before the transfer occurs. We do not read Epstein so broadly. Epstein states: "Accordingly, in order to invalidate a transfer that occurred more than 90 days before the filing of the bankruptcy petition the trustee must establish that ... (2) the debtor was insolvent at the time, of the transfer____" (emphasis added). Thus, Epstein was dealing with a situation where the trustee desired to invalidate a transfer made more than 90 days prior to the filing of the bankruptcy petition (which typically is not a preferential payment), not the situation we are dealing with where the trustee is attempting to invalidate a transfer during the 90 day period.

. The fact that a setoff never actually took place does not affect the analysis. The issue is whether Exxon hypothetically had the right to a setoff, and because of this right it was secured and therefore the payment received from Braniff was not a voidable preference.

. Since there is no insufficiency, it could be argued that section 553(b)(1) is not applicable, based on the plain language of that section, which states "the trustee may recover ... the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of ..." and section 553(b)(2), which defines "insufficiency" as the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debt- *1041 or by the holder of such claim." Following this argument, Exxon had no insufficiency at the date of setoff under section 553(b). Therefore, there could be no insufficiency to be compared to the point when the first insufficiency arose. Thus, section 553(b) would not be applicable.
We do not believe such an interpretation is an accurate reading of section 553. First, consider an example provided by Collier:
suppose that on the 90th day prior to bankruptcy the debtor comes to the bank and receives a $12,000 loan to be repaid in 3 monthly installations of $4,000. The debtor opens a bank account of [sic] the 90th day before bankruptcy with balance [sic] of $2,000. Thus die insufficiency on the 90th day before bankruptcy is $10,000. On the 60th day before bankruptcy, the debtor pays $4,000 on the loan reducing the debt owed to the bank to $8,000. (Assume the repayment falls within the section 547(c)(2) and is not preferential.) On the 30th day before bankruptcy the debtor pays only $3,000 on the loan because of cash flow problems. On the 29th day before bankruptcy the bank declares an event of default, accelerates the debt, and sets off the $2,000 in the bank account. The insufficiency on the date of setoff was $3,000 ($5,000-$2,000). The improvement in position is $7,000 ($10,000-$3,000).
4 Collier on Bankruptcy ¶ 553.08, at 553-43 to -44 (15th ed. 1986) (footnote omitted). In Collier’s example, the trustee would be able to recover $7,000. Changing Collier’s hypothetical, assume that on the 30th day the debtor also deposited $4,000. On the 30th day, the bank would have deposits of $6,000, versus a debt of $5,000. The next day the bank sets off these amounts. There is no insufficiency on the date of setoff; the bank would setoff the full $5,000 and return $1,000 to the debtor. If the above argument were adopted, this improvement of $10,000 ($10,000-0) could not be recovered because there was no insufficiency at the time of setoff. There is no indication in the bankruptcy code that such an anomolous result should be permitted, and we decline to adopt such a position.

. Exxon argues that section 553(b) is inapplicable because the setoff occurred post-petition. If Exxon had a post-petition setoff, it appears that section 553(b) would be inapplicable. See Delta Energy, 67 B.R. at 11; In re Compton Corp., 22 B.R. 276, 277-78 (Bankr.N.D.Texas 1982). The Compton rationale, however, does not apply to the present case. In Compton, creditor Exxon had a pre-petition claim against Compton, which if setoff pre-petition would have allowed the trustee to utilize the improvement in position test in section 553(b). Exxon, however, did not setoff pre-petition. The court held that Exxon did not lose its pre-petition right to setoff, but had to proceed in the bankruptcy court by means of filing a complaint to lift the automatic stay so as to be allowed post-petition to exercise its already existing right to offset. Id. at 278. Section 553(b) was not applicable because of the availability of court review and control. The court could take into consideration the improvement in position test. Id.
In the present case this did not occur. Exxon never filed a post-petition complaint to setoff the debts at issue in this appeal. Thus, the Compton safeguard is not present. Instead, what Exxon is arguing is that by reason of section 553(a) it was fully secured at all times during the 90 day period prior to bankruptcy. But Exxon is also arguing that for purposes of section 553(b) the setoff should be calculated post-petition. Such an analysis would allow Exxon to avoid the improvement in position test. Exxon wants it both ways; we decline to let Exxon have it both ways. If Exxon wants to rely on a pre-petition right to setoff pursuant to section 553, it must comply with both sections 553(a) and 553(b). Otherwise, Exxon could attempt to obtain post-petition setoff, and petition the bankruptcy court for this right and that court could then take into account the improvement in position test. See Compton.