In re Thomas Olin REED, Sr., Debtor.

UNITED STATES of America By and Through its Agency the FARMERS HOME ADMINISTRATION, Movant,

v.

Thomas Olin REED, Sr., Debtor and A. Stephenson Wallace, Chapter 12 Trustee, Respondents.

Bankruptcy No. 94–10105.

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

March 30, 1995.

Edmund A. Booth, Jr., First Asst. U.S. Atty., Augusta, GA, for movant.

Charles B. Merrill, Jr., Swainsboro, GA, for debtor.

A. Stephenson Wallace, Chapter 12 Trustee, Augusta, GA.

## ORDER

JOHN S. DALIS, Bankruptcy Judge.

■ Pursuant to notice, hearing was held on the motion of the United States of America ("USA") by and through its agency the Farmers Home Administration ("FmHA") seeking relief from the stay of 11 U.S.C. § 362(a) to accomplish a setoff of amounts owing to the debtor from the USA through the Commodity Credit Corporation ("CCC") under disaster relief and dairy refund payment programs, against the amount owed by the debtor to the USA through the FmHA. In bankruptcy, a right to setoff is preserved under 11 U.S.C. § 553(a) [1]. Under this section, in order for a creditor's right to setoff under applicable nonbankruptcy law to continue in bankruptcy, (1) the setoff must involve a mutual debt so that both the creditor and debtor owe each other money, (2) both sets of obligations must arise prior to the bankruptcy filing, and (3) the setoff cannot fall within the three exceptions outlined in § 553(a)(1)–(3). *In re Orlinski*, 140 B.R. 600, 602 (Bankr.S.D.Ga.1991), citing *In re Dillard Ford*, 940 F.2d 1507, 1512 (11th Cir.1991).

■ With regard to the first requirement, that the debts be mutual, it has been established that the government may set off funds owed by one agency in order to collect debts owed to other agencies. *See Bosarge v. United States Department of Education*, 5 F.3d 1414, 1419 (11th Cir.1993) (finding right of setoff between government agencies implicit in *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946)). In this case, the USA through the FmHA holds a claim against Mr. Reed and through the CCC is liable on a debt to Mr. Reed. Under *Bosarge* and *Cherry Cotton Mills*, the mutuality requirement is satisfied.

■ The second requirement is that both obligations arose pre-petition. It is undisputed that the obligation of Mr. Reed to the FmHA arose pre-petition, leaving the question of when the $10,044.34 obligation of the CCC to Mr. Reed arose. In order to determine when the CCC's debt to Mr. Reed arose, I begin with the language in the Code defining "debt" as a "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined in turn as,

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;....

11 U.S.C. § 101(5)(A).

In finding an obligation stemming from pre-payments for fuel to have arisen pre-petition, the Fifth Circuit Court of Appeals used a "transaction test" in finding that because the transactions giving rise to liability had taken place prior to the petition date, on the date of filing the debt arising therefrom was absolutely owed although it had not yet been calculated, stating that "the debt owed the debtor does not have to be calculated prior to the filing of the bankruptcy petition in order for setoff to be available to a creditor." *Braniff Airways, Inc. v. Exxon Co.*,

---

1. 11 U.S.C. § 553(a) states that,

    (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

    (1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;

    (2) such claim was transferred, by an entity other than the debtor, to such creditor—
    (A) after the commencement of the case; or
    (B)(i) after 90 days before the date of the filing of the petition; and
    (ii) while the debtor was insolvent; or
    (3) the debt owed the debtor by such creditor was incurred by such creditor—
    (A) after 90 days before the date of the filing of the petition;
    (B) while the debtor was insolvent; and
    (C) for the purpose of obtaining a right of setoff against the debtor.

*USA,* 814 F.2d 1030, 1036 (5th Cir.1987), citing *In re Delta Energy Resources, Inc.,* 67 B.R. 8, 12 (Bankr.W.D.La.1986); *see also, United States through Agricultural Stabilization and Conservation Service v. Gerth,* 991 F.2d 1428, 1433 (8th Cir.1993) ("for setoff purposes, a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed. *Braniff Airways,* 814 F.2d at 1036.... [d]ependency on a post-petition event does not prevent a debt from arising pre-petition") (citing *Braniff Airways, supra,* 814 F.2d at 1036). Because there has been no test enunciated by the Eleventh Circuit for measuring when a claim becomes "absolutely owed," I find that the *Braniff* court's "transaction test" is appropriate for determination of when the obligations of the CCC to Mr. Reed arose. As these obligations arose under two different programs, I will address each separately.

**A.  The disaster relief program.**

■  Mr. Reed filed his initial application for disaster benefits, administered under 7 C.F.R. Part 1477, on ASCS–Form 574 [2] on March 19, 1993, submitting crop loss information verified by Geneva Taylor [3] March 22, 1993. The County Committee approved the application April 14, 1993, but Ms. Taylor testified that payment could not be made prior to the end of 1993, the end of the year for which the disaster benefits were sought [4]. On January 19, 1994, Mr. Reed filed for relief under Chapter 12 of Title 11 United States Code. Mr. Reed made his final application for payment, as Ms. Taylor testified was routine, March 4, 1994 and was approved March 8, 1994. Any right the government may have to setoff hinges on the determina-

tion of when Mr. Reed became entitled to receive the disaster relief benefits.

I cannot locate any statutory or case authority defining when the right to payment under a disaster relief program arises, but based upon the facts of this case I find that under the deficiency program the transactions giving rise to the CCC's liability to pay benefits to Mr. Reed were completed at the close of the year for which benefits were sought. Ms. Taylor testified that the government does not become obligated to pay until approval by the county committee, which took place April 14, 1993. Mr. Reed's right to the disaster payment appears to have been defeasible until the close of the crop year, after which no event could deprive Mr. Reed of his right to payment and after which there remained no "performance" to be completed by Mr. Reed save the ministerial task of filing his final application for payment. At the time of bankruptcy filing, Mr. Reed's claim against the CCC was an unliquidated debt. The mutuality requirement is satisfied with regard to the disaster benefits.

**B.  The Milk Reduction Program.**

■  By letter from Ms. Taylor dated January 4, 1994, Mr. Reed was notified that the dairy refund payment program, administered under 7 C.F.R. Part 1430 et seq., was under way and that applications for a refund could be submitted from January 4, 1994 through March 15, 1994 [5]. Ms. Taylor testified that the earliest payment date under this program was from March 15, 1994 to April 13, 1994. Ms. Taylor testified further that under this program, withholdings were made from checks paid to Mr. Reed throughout the year, such withholdings to be refunded to the payor if milk production for the year is less than the year before. *See* 7 C.F.R. §§ 1430.343(c), 1430.344(a). Mr. Reed filed

---

2.  Pursuant to 7 C.F.R. § 1477.5(a)(1).

3.  Ms. Taylor is the County Executive Director of the Agricultural Stabilization and Conservation Service of the U.S. Department of Agriculture. She testified at hearing regarding the procedures undertaken in claiming benefits under both these programs.

4.  An applicant's eligibility for disaster benefits is in part dependent on income for the tax year for

which benefits are sought, see 7 C.F.R. §§ 1477.5(a)(5) and 1477.4(a), not finally determinable until the close of the tax year.

5.  Pursuant to 7 C.F.R. § 1430.344(h) and (i), applications for refunds may not be made prior to the close of the refund period (in this case December 31, 1993) but must be made prior to March 15 of the following year.

an application to obtain a refund for decreased milk production in 1993 (as compared to production levels for 1992) on March 8, 1994. Ms. Taylor testified that this application was approved in late April of 1994. The issue is when did Mr. Reed become entitled to receive this refund payment?

Significantly, Ms. Taylor compared the dairy refund program to income tax withholdings: withholdings are made throughout the year and any overpayment is refunded to the payor after the year's end. I have previously held that tax liability accrues at the end of the tax year. *See In re Orlinski, supra.* Applying this rule to these facts results in the conclusion that the dairy refund obligation of the CCC arose at the close of the year, pre-petition. At the close of the year in question Mr. Reed's milk production could be finally determined and any consequent refund calculated. This refund was, like the disaster payments, an unliquidated claim of Mr. Reed against the CCC at the close of the year. That the tasks of calculation and liquidation of the claim remained to be effected post-petition does not defeat this debt from falling within the definitions of "debt" held by Mr. Reed against the CCC at the time of filing. The requirement of mutuality is satisfied with regard to the dairy refund payment.

The final requirement to establish for setoff is that the setoff does not fall within any of the exceptions outlined in § 533(a)(1)–(3), *supra. Orlinski, supra,* was not relied upon by the debtor and I find that the setoff does not fall within these three exceptions. Accordingly, I find that all three requirements have been satisfied to permit setoff by the government of its obligations through CCC to Mr. Reed against Mr. Reed's obligations to the FmHA. The motion for relief to permit setoff is ORDERED granted.